UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KIMBERLY BEHZADI,                              :
                                               :   Case No.:  14-CV-4382 (LGS)
                    Plaintiff,                 :
                                               :
        v.                                     :   **ECF Case**
                                               :
INTERNATIONAL CREATIVE                         :
MANAGEMENT PARTNERS, LLC,                      :
                                               :
                    Defendant.                 :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
INTERNATIONAL CREATIVE MANAGEMENT PARTNERS LLC'S
MOTION TO DISMISS THE COMPLAINT AND TO COMPEL ARBITRATION**

 

**PROSKAUER ROSE LLP**
Elise M. Bloom, Esq.
Steven D. Hurd, Esq.
Michelle A. Annese, Esq.
Eleven Times Square
New York, New York 10036-8299
Ph. (212) 969-3000
Fax (212) 969-2900

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTS .................................................................................................................. 2

    A.    The Parties ................................................................................................................ 2

        1.    ICM ............................................................................................................... 2

        2.    Plaintiff Kimberly Behzadi ........................................................................... 2

    B.    The Terms of Plaintiff's Arbitration Agreement ..................................................... 3

    C.    The Dispute Between the Parties ............................................................................. 4

ARGUMENT ............................................................................................................................... 5

Point I: This Action Should Be Dismissed And Plaintiff Should Be Compelled To Arbitrate All Of Her Claims Because The Federal Arbitration Act Requires The Arbitration Of This Dispute………………………………………………………………………………………....5

    A.    This Dispute Is Governed By The Federal Arbitration Act. ................................... 5

    B.    The FAA Requires Arbitration Of The Claims Asserted in Plaintiff's Complaint. ................................................................................................................ 7

        1.    Behzadi Entered Into A Valid And Enforceable Agreement To Arbitrate. ...................................................................................................... 8

        2.    Behzadi's Agreement To Arbitrate Encompasses The Claims In The Complaint, Which Are Arbitrable. ............................................................. 10

        3.    All Of Behzadi's Claims Should Be Compelled To Arbitration. .................. 12

Point II: Defendant Should Be Granted The Fees And Costs Associated With This Motion To Dismiss The Complaint And To Compel Arbitration………………………………………..12

CONCLUSION ......................................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson*,
 513 U.S. 265 (1995)..................................................................................................................5

*Arrigo v. Blue Fish Commodities, Inc.*,
 408 Fed. Appx. 480 (2d Cir. 2011).....................................................................................10, 11

*AT&T Mobility LLC v. Concepcion*,
 131 S. Ct. 1740 (2011)..............................................................................................................7

*Circuit City Stores, Inc. v. Adams*,
 532 U.S. 105 (2001)..................................................................................................................5

*Dean Witter Reynolds v. Byrd*,
 470 U.S. 213 (1985)..................................................................................................................7

*DeBono v. Wash. Mut. Bank*,
 No. 05 Civ. 10333, 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006)............................................9

*Dubois v. Macy's East Inc.*,
 No. 06 CV 6522, 2007 WL 3193169 (E.D.N.Y. July 13, 2007), *aff'd*, 338 Fed. App'x
 32 (2d Cir. 2009).......................................................................................................................6

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*,
 35 Cal. 3d 312 (1983) ..............................................................................................................6

*Feroce v. Bloomingdale's Inc.*,
 No. 12-CV-5014, 2014 WL 294199 (E.D.N.Y. Jan. 24, 2014) ...............................................9

*Fletcher v. Kidder, Peabody & Co.*,
 81 N.Y.2d 623, *cert. denied*, 510 U.S. 993 (1993) ..................................................................6

*Genesco, Inc. v. T. Kakiuchi & Co.*,
 815 F.2d 840 (2d Cir. 1987)..................................................................................................7, 8

*Gold v. Deutsche Aktiengesellschaft*,
 365 F.3d 144 (2d Cir. 2004)......................................................................................................9

*Graphic Scanning Corp. v. Yampol*,
 850 F.2d 131 (2d Cir. 1988)......................................................................................................5

*Holick v. Cellular Sales of N.Y., Inc.*,
 937 F. Supp. 2d 311 (N.D.N.Y. 2013)....................................................................................11

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004) ................................................................................................7

*Johnson v. Tishman Speyer Props., L.P.*,
   No. 09 Civ. 1959, 2009 WL 3364038 (S.D.N.Y. Oct. 16, 2009) .............................................12

*Masthead Mac Drilling Corp. v. Fleck*,
   549 F. Supp. 854 (S.D.N.Y. 1982) .........................................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*,
   473 U.S. 614 (1985) ..................................................................................................6, 7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .......................................................................................................6, 7, 8

*Nunez v. Citibank, N.A.*,
   No. 08 Civ. 5398, 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009) ..........................................6, 8, 9

*Perry v. N.Y. Law Sch. & Collegis, Inc.*,
   No. 03 Civ. 9221, 2004 WL 1698622 (S.D.N.Y. July 28, 2004) .............................................12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ..............................................................................................................5

*Reynolds v. de Silva*,
   No. 09 Civ. 9218, 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) ..............................................12

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ................................................................................................8

*Rubin v. Sona Int'l Corp.*,
   457 F. Supp. 2d 191 (S.D.N.Y. 2006) ...................................................................................12

*Severin v. Project OHR, Inc.*,
   No. 10-cv-9696, 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011) ..............................................12

*Sinnett v. Friendly Ice Cream Corp.*,
   319 F. Supp. 2d 439 (S.D.N.Y. 2004) ...................................................................................12

*Tarulli v. Circuit City Stores, Inc.*,
   333 F. Supp. 2d 151 (S.D.N.Y. 2004) .....................................................................................9

*Valsan Partners Ltd. P'ship v. Calcor Space Facility, Inc.*,
   25 Cal. App. 4th 809 (1994) ..................................................................................................6

*Vianna v. Doctor's Mgmt. Co.*,
   27 Cal. App. 4th 1186 (1994) ................................................................................................6

**STATUTES**

Fair Labor Standards Act ("FLSA") ................................................................................... passim

Federal Arbitration Act ("FAA") ......................................................................................... passim

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ............................................................1

Federal Arbitration Act, 9 U.S.C. § 3 ..........................................................................................1

Federal Arbitration Act, 9 U.S.C. § 4 .......................................................................................1, 7

New York Labor Law ("NYLL") ..................................................................................1, 4, 10, 11

**PRELIMINARY STATEMENT**

Defendant International Creative Management Partners LLC ("ICM" or "Defendant") respectfully moves this Court for an Order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. §§ 3, 4: (i) dismissing this action because all claims contained in the Complaint are subject to arbitration under a valid arbitration agreement; and (ii) compelling Plaintiff Kimberly Behzadi ("Behzadi" or "Plaintiff") to arbitrate the claims asserted in her Complaint pursuant to the arbitration clause contained in the "Mutual Agreement to Arbitrate All Employment-Related Disputes" (the "Arbitration Agreement") signed by Behzadi.

Behzadi, a former academic intern and former employee of ICM, signed the Arbitration Agreement at the time of her hire as a full-time employee, in which she expressly agreed that: "[a]ny and all disputes arising out of or in any way relating to my employment with the Company shall be resolved and settled exclusively by final and binding arbitration pursuant to the Federal Arbitration Act ("FAA")." (*see* Arbitration Agreement, annexed to the Affidavit of Karen Abrams ("Abrams Aff.") as Exhibit ("Ex.") B, at Section A.).  In disregard of her obligations under the Arbitration Agreement and despite ICM's notice to her of the same, Behzadi has filed a Complaint against ICM in this Court purporting to assert claims that she and other academic interns were employees of ICM and, thus, are entitled to wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  The claims she asserts cover periods of time preceding, during, and after her employment with ICM.

Because the claims asserted by Behzadi in the Complaint are plainly within the scope of the Arbitration Agreement's broad arbitration provision, her claims must be adjudicated in arbitration – and only in arbitration – pursuant to the Arbitration Agreement.  Moreover, because ICM reminded Plaintiff of the Arbitration Agreement and Plaintiff nonetheless filed her

Complaint, an award of reasonable costs and fees to Defendant is warranted. Accordingly, this Court should dismiss the Complaint, compel Plaintiff to arbitrate her claims in accordance with the terms of the Arbitration Agreement,[1] and award Defendant the fees and costs associated with bringing this motion.

## RELEVANT FACTS

### A. The Parties

#### 1. ICM

ICM is one of the world's largest talent and literary agencies with offices in New York, Los Angeles, and London, and represents creative and technical talent in the fields of motion pictures, television, books, music, live performance, branded entertainment, and new media. (Abrams Aff., ¶ 2).

ICM offers academic internship experiences aimed at augmenting the academic intern's educational experience at their respective college and/or university. (Abrams Aff., ¶ 3). The nature of securing an ICM academic internship is extremely competitive; ICM's New York office alone receives an average of 300 academic internship applications per year, only 10-15% of which are accepted for an academic internship experience with ICM. (*Id*.). ICM provides its academic interns with valuable learning experiences, including the ability to learn what it means to be an agent or executive and how a talent agency operates within the entertainment industry. (*Id*.).

#### 2. *Plaintiff Kimberly Behzadi*

Behzadi was an ICM academic intern from January 6, 2012 through May 15, 2012, at ICM's New York office. (Compl., ¶ 52; Abrams Aff., ¶ 5). In June 2012, Behzadi submitted an

---

[1] Although the Arbitration Agreement states that the arbitration shall be held in Los Angeles, California, Defendant is willing to proceed with arbitration in New York City.

2

Application for Employment, seeking a position as an Assistant. (Abrams Aff., ¶ 6).  On or about November 5, 2012, she commenced her employment with ICM as a Floater Assistant in the Motion Picture Talent department of ICM's New York office. (Abrams Aff., ¶ 7).  Unfortunately, Plaintiff did not advance in her career with ICM as she had hoped and voluntarily resigned her employment with ICM on or about December 13, 2013. (Abrams Aff., ¶ 10).

**B.     The Terms of Plaintiff's Arbitration Agreement**

On or about November 6, 2012, Behzadi signed an "Offer of Employment" and the Arbitration Agreement. (Abrams Aff., ¶ 7 and Ex. A).  By signing both documents, Behzadi agreed to be bound by all terms and conditions set forth therein, including the dispute resolution procedures described in the Arbitration Agreement. (Abrams Aff., Ex. A and B).  In particular, Section A of the Arbitration Agreement contains a broad arbitration clause that sets forth Plaintiff's commitment to arbitrate all employment-related disputes.  It states, in relevant part:

> Any and all disputes arising out of or in any way relating to my employment with the Company shall be resolved and settled exclusively by final and binding arbitration pursuant to the Federal Arbitration Act ("FAA").  Disputes covered by this Agreement include, but are not limited to, disputes about, arising from or relating to the terms and conditions of my employment and employment agreement (if any), the time, manner, means and propriety of its termination, claims of retaliatory discharge, constructive discharge, any type of unlawful discrimination, sexual or other harassment, breach of contract or breach of the implied covenant of good faith and fair dealing, tortious conduct of any party to this Agreement, violations of public policy or any claim of a violation of a right protected by federal, state or other governmental law, statute, regulation or ordinance, or the common law . . . .

(Abrams Aff., Ex. B, Section A).

In the section entitled "Voluntary Agreement to Arbitrate/Knowing Waiver of Rights" (Section G of the Arbitration Agreement), immediately preceding the signature block, it further states, in pertinent part, that "[t]he Company and I understand that by signing this Agreement, we

3

are knowingly and voluntarily waiving our respective rights to have any claim or dispute governed by this Agreement decided by a court or in a jury trial." (Abrams Aff., Ex. B).

### C.   The Dispute Between the Parties

ICM received a letter dated May 28, 2014, from Plaintiff's counsel, contending that Plaintiff was an employee of ICM during her academic internship and is purportedly entitled to wages under the FLSA and the NYLL. (Declaration of Steven D. Hurd, Esq. ("Hurd Decl.") ¶ 2, Ex. A).  In that letter, Plaintiff further advised ICM that she was interested in filing a class and collective lawsuit on behalf of herself and other ICM interns for wages under the FLSA and the NYLL. (*Id.*).  In a letter dated June 4, 2014, ICM advised Plaintiff that she was bound by the Arbitration Agreement to use final and binding arbitration as the exclusive forum for resolving disputes arising out of her employment.  (Hurd Decl., ¶ 3, Ex. B).  Further, ICM provided Plaintiff with a copy of her signed Arbitration Agreement.  (*Id.*).  On June 13, 2014, ICM filed a Statement of Claim with JAMS against Behzadi, seeking a declaratory judgment that Behzadi is not owed any wages from ICM for her academic internship under either the FLSA or the NYLL. (Hurd Decl., ¶ 4, Ex. C).

Notwithstanding the Arbitration Agreement, which unmistakably requires her to arbitrate any and all disputes against Defendant arising from her employment relationship, and the notice provided by ICM on June 4, Plaintiff filed the Complaint in this action on June 17, 2014. (*see* Complaint, Dkt. No. 1).  The gravamen of Plaintiff's Complaint is that she and other academic interns were employees of ICM and, thus, were entitled to wages under the Fair Labor Standards Act and New York Labor Law. (*see* Complaint, ¶¶ 6, 7).  Plaintiff's claims cover the periods prior to, during, and following the cessation of her employment with ICM.[2]

---

[2] Plaintiff alleges that she and other ICM academic interns were not paid the minimum wage for all hours worked between June 17, 2008 and the date of final judgment in this matter, under the NYLL. (*see* Complaint, ¶¶ 26-36).

4

# ARGUMENT

## POINT I

**THIS ACTION SHOULD BE DISMISSED AND PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE ALL OF HER CLAIMS BECAUSE THE FEDERAL ARBITRATION ACT REQUIRES THE ARBITRATION OF THIS DISPUTE.**

### A.   This Dispute Is Governed By The Federal Arbitration Act.

The Federal Arbitration Act, ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to all contracts involving interstate commerce. The term "involving interstate commerce" is construed broadly. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995). As the Supreme Court has held, "the control over interstate commerce . . . reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967). Where an employer's business is national in scope, the FAA will govern disputes about arbitrability. *See*, *e.g.*, *Graphic Scanning Corp. v. Yampol*, 850 F.2d 131, 133 (2d Cir. 1988) (concluding that FAA applies where employer operated in several states).

The Arbitration Agreement at issue here is undoubtedly within the scope of the FAA. ICM's business – the representation of creative and technical talent across the United States – is national in scope, and thus, plainly involves interstate commerce. (Abrams Aff., ¶ 2). Moreover, ICM has offices in both New York and Los Angeles. (*Id.*).

In addition, it is well-settled that the FAA applies to agreements such as the Arbitration Agreement signed by Plaintiff. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123-24 (2001) (holding that FAA governs arbitration clauses in employment contracts other than those

---

She makes the same allegation under the FLSA for the period between June 17, 2011 and the date of final judgment in this matter. (*see* Complaint, ¶¶ 37-38).

5

for transportation workers); *Nunez v. Citibank, N.A.*, No. 08 Civ. 5398, 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009); *Dubois v. Macy's East Inc.*, No. 06 CV 6522, 2007 WL 3193169 (E.D.N.Y. July 13, 2007), *aff'd*, 338 Fed. App'x 32 (2d Cir. 2009); *see also Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, at 638, *cert. denied*, 510 U.S. 993 (1993) (holding that arbitration clause in an employment contract "is within the class of agreements that are governed by the FAA").

Further, in situations where the FAA applies, it is a basic principle that the FAA preempts state law on the subject of the enforceability of arbitration clauses. *See Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (holding courts should apply federal substantive law of arbitrability to any arbitration agreement within coverage of FAA); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (FAA creates a "body of federal substantive law of arbitrability"). Therefore, even though the Arbitration Agreement provides that it be governed by the laws of California (Abrams Aff., Ex. B, Section F), in arbitration disputes like this where the contract involves interstate commerce, federal – not state – arbitration law applies. *See Masthead Mac Drilling Corp. v. Fleck*, 549 F. Supp. 854, 856 (S.D.N.Y. 1982) ("[n]or is the applicability of the Federal Arbitration Act affected or diluted by the fact that the agreements between the parties specify that they are controlled by New York law"); *Fletcher*, 81 N.Y.2d at 630-31 ("the provisions of the FAA are controlling even though the dispute itself may arise under State law").[3]

---

[3] Notably, even if California law applied, it espouses the same strong policy in favor of arbitration. *Vianna v. Doctor's Mgmt. Co.*, 27 Cal. App. 4th 1186, 1189 (1994) ("Because California has a 'strong public policy in favor of arbitration,' … 'arbitration agreements should be liberally interpreted and arbitration should be ordered unless the agreement clearly does not apply to the dispute in question.") (some internal quotation marks omitted); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 323 (1983) ("In this state, as under federal law, doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration."); *Valsan Partners Ltd. P'ship v. Calcor Space Facility, Inc.*, 25 Cal. App. 4th 809, 816 (1994) (California "courts will indulge every intendment to give effect to [arbitration] proceedings").

### B. The FAA Requires Arbitration Of The Claims Asserted in Plaintiff's Complaint.

A motion to compel arbitration is governed by Section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA, and the strong federal policy favoring arbitration that it embodies, requires courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.*, 473 U.S. at 626; *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (*quoting Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24) (discussing "liberal federal policy favoring arbitration" under FAA); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004). Indeed, courts are obligated to "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC*, 131 S. Ct. at 1745 (citations omitted).

When a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a judicial order compelling arbitration is mandatory. *See* 9 U.S.C. § 4 (directing that the court "shall" order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."); *see also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) ("by its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (*quoting Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 221 (1985)).

Further, the courts should construe arbitration clauses as broadly as possible, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,

whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

The exacting application and broad construction of arbitration agreements dictate that, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco*, 815 F.2d at 846. Thus, a broad arbitration clause creates a presumption of arbitrability which can be overcome only if it "may be said with positive assurance that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute." *Nunez*, 2009 WL 256107, at *3 (*citing Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)).

In deciding a motion to compel arbitration through the lens of the strong policy favoring arbitration, this Court must consider four factors: (i) whether the parties have agreed to arbitrate their disputes; (ii) whether the scope of that agreement encompasses the plaintiff's claims; (iii) if federal statutory claims are asserted, whether the legislature intended them to be non-arbitrable; and (iv) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *See Genesco*, 815 F.2d 840, at 846 (*citing Mitsubishi Motors*, 473 U.S. at 626-29)). As set forth below, application of these factors clearly requires that Plaintiff's Complaint be dismissed and that she be compelled to arbitration.

### 1. *Behzadi Entered Into A Valid And Enforceable Agreement To Arbitrate.*

Plaintiff has unquestionably entered into a valid, unconditional and enforceable written agreement to arbitrate the very same claims she purports to bring before this Court, as evidenced by the following provision in the Arbitration Agreement:

> *Any and all disputes arising out of or in any way relating to my employment with the Company shall be resolved and settled exclusively by final and binding arbitration pursuant to the*

> *Federal Arbitration Act* ("FAA").  Disputes covered by this Agreement include, but are not limited to, disputes about, arising from or relating to the terms and conditions of my employment and employment agreement (if any), the time, manner, means and propriety of its termination, claims of retaliatory discharge, constructive discharge, any type of unlawful discrimination, sexual or other harassment, breach of contract or breach of the implied covenant of good faith and fair dealing, tortious conduct of any party to this Agreement, violations of public policy or any claim of a violation of a right protected by federal, state or other governmental law, statute, regulation or ordinance, or the common law . . . .

(Abrams Aff., Ex. B, Section A) (emphasis supplied).  Moreover, on the last page of the Arbitration Agreement, immediately prior to Plaintiff's signature, it states again, in bold and capital letters: "[t]he Company and I understand that by signing this Agreement, we are knowingly and voluntarily waiving our respective rights to have any claim or dispute governed by this Agreement decided by a court or in a jury trial." (Abrams Aff., Ex. B).

With full knowledge of the terms of Section A and the bold, capitalized notice located directly above the signature line, Plaintiff signed the Arbitration Agreement on or about November 6, 2012, entering into a valid, enforceable agreement to arbitrate and began her employment with ICM.  No question exists under these circumstances that arbitration is warranted.  *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 148 (2d Cir. 2004); *Feroce v. Bloomingdale's Inc.*, No. 12-CV-5014, 2014 WL 294199 (E.D.N.Y. Jan. 24, 2014); *Nunez*, 2009 WL 256107, at *3; *DeBono v. Wash. Mut. Bank*, No. 05 Civ. 10333, 2006 WL 3538938 (S.D.N.Y. Dec. 8, 2006); *Tarulli v. Circuit City Stores, Inc.*, 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where "[t]he Plaintiff voluntarily signed the [arbitration] Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration").

### 2. *Behzadi's Agreement To Arbitrate Encompasses The Claims In The Complaint, Which Are Arbitrable.*

All of the claims asserted by Behzadi in the Complaint are within the scope of the Arbitration Agreement and the mandate of the FAA, including the claims that predate her employment with ICM.

Here, the Arbitration Agreement specifically provides that it "[a]ny and all disputes *arising out of or in any way relating to my employment with the Company* shall be resolved and settled exclusively by final and binding arbitration . . . ." (Abrams Aff., Ex. B, Section A) (emphasis supplied). The gravamen of Plaintiff's Complaint here – that she and other ICM academic interns were employees of ICM and, thus, are owed wages under the FLSA and NYLL – expressly falls within the scope of the arbitration clause, as the allegations clearly relate to her alleged employment relationship with ICM. Moreover, in her Complaint, Behzadi makes clear that her claims are not based solely on her experiences as an ICM academic intern. Rather, she alleges that <u>during</u> her employment with ICM, "ICM assigned five unpaid interns to work under [her]," that "[t]he interns shouldered some of [her] workload and allowed her to work fewer hours," that she "observed approximately 30 interns working at ICM in New York during the summer of 2013," and that "none of the summer interns were paid." (Complaint, ¶¶ 60-68).

As such, simply because some of Behzadi's allegations pre-date the execution of the Arbitration Agreement is of no consequence, as held by the Second Circuit in *Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed. Appx. 480 (2d Cir. 2011). In *Arrigo*, the plaintiff argued that the arbitration provision in his employment agreement did not apply to FLSA claims which accrued prior to him signing the employment agreement. *Id*. at 481. The Second Circuit disagreed, noting that "nothing in the arbitration provision places a temporal limitation on arbitrability." *Id*. at 482. Rather, the arbitration provision encompassed "'*all* federal and state statutory claims'

10

and '*any* other . . . basis of action pertaining to [Arrigo's] employment.'" *Id*. (emphasis in original). Moreover, "the agreement 'to substitute' arbitration for judicial resolution of disputes indicates that the parties anticipated arbitration as the primary method of dispute resolution." *Id*.

Here, similar to *Arrigo*, the Arbitration Agreement signed by Behzadi contains no temporal limitation. Rather, analogous to the agreement in *Arrigo*, the Arbitration Agreement covers "[a]*ny* and all disputes arising out of or in any way relating to my employment with the Company" and "*any* claim of a violation of a right protected by federal, state, or other governmental law, statute, regulation or ordinance . . . ." (Abrams Aff., Ex. B, Section A) (emphasis supplied).

That ICM and Behzadi intended for arbitration to be the primary method of dispute resolution is also clear. Indeed, by signing the Arbitration Agreement, Behzadi agreed that "an expedient and private method of resolving all of our disputes with one another is to our mutual advantage," that "[t]he mutual promises between the Company and me to arbitrate our disputes, rather than to litigate them in a court of law or before a jury, provide full and adequate consideration for this Agreement," and that "[a]ny and all disputes . . . shall be resolved and settled exclusively by final and binding arbitration." Thus, the intent of the parties to arbitrate any and all disputes is evident by the plain language of the Arbitration Agreement.

Finally, there is nothing in the language or history of the relevant federal statute (*i.e.*, FLSA) to indicate a congressional intent to foreclose arbitration of the wage claims asserted by Behzadi. *Holick v. Cellular Sales of N.Y., Inc.*, 937 F. Supp. 2d 311 (N.D.N.Y. 2013) ("Congress intended plaintiffs' FLSA claims to be subject to arbitration under the FAA."). Indeed, the courts routinely hold that FLSA (and NYLL) claims are arbitrable and may be compelled to

11

arbitration. *Severin v. Project OHR, Inc.*, No. 10-cv-9696, 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011) ("[i]t is well-established that FLSA claims are susceptible to arbitration").

### 3. All Of Behzadi's Claims Should Be Compelled To Arbitration.

Because all of Plaintiff's claims fall within the scope of the arbitration provision contained in the Arbitration Agreement, the FAA requires that this Court dismiss the Complaint and compel arbitration of the dispute. *See Reynolds v. de Silva*, No. 09 Civ. 9218, 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) (referring all of plaintiff's claims to arbitration as staying the action would be an inefficient use of court's docket); *Johnson v. Tishman Speyer Props., L.P.*, No. 09 Civ. 1959, 2009 WL 3364038, at *4 (S.D.N.Y. Oct. 16, 2009) ("[C]ourts have the discretion to dismiss – rather than stay – an action when all of the issues in it must be arbitrated."); *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191 (S.D.N.Y. 2006) (holding that "[w]here all of the issues raised in the Complaint must be submitted to arbitration . . . dismissal is appropriate"); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004) (where all of plaintiff's claims were arbitrable, concluding to dismiss the complaint rather than stay litigation); *Perry v. N.Y. Law Sch. & Collegis, Inc.*, No. 03 Civ. 9221, 2004 WL 1698622, at *4 (S.D.N.Y. July 28, 2004) ("[b]ecause all of plaintiff's claims are subject to arbitration, no useful purpose will be served by granting a stay of plaintiff's claims against Collegis and thus its action against the defendant is dismissed").

## POINT II

### DEFENDANT SHOULD BE GRANTED THE FEES AND COSTS ASSOCIATED WITH THIS MOTION TO DISMISS THE COMPLAINT AND TO COMPEL ARBITRATION.

In addition to dismissing the Complaint and compelling arbitration, this Court should also award Defendant the damages, fees, and costs incurred in making this motion.

ICM advised Plaintiff by letter, dated June 4, 2014 (Hurd Decl., ¶ 3, Ex. B), that she was bound by the Arbitration Agreement to use final and binding arbitration as the exclusive forum for resolving disputes arising out of or relating to her employment with ICM and provided Plaintiff with a copy of the signed Agreement. (*Id*.). In this letter, ICM expressly notified Plaintiff that it would seek monetary sanctions, including attorneys' fees, if Plaintiff sought to her pursue her claims in any forum other than JAMS. (*Id*.). Nevertheless, Plaintiff chose to file the Complaint in this action and has not withdrawn it. Accordingly, Defendant is entitled to the reasonable sums and costs, including attorneys' fees, incurred in bringing this motion.

## **CONCLUSION**

For the foregoing reasons, ICM is entitled to an Order dismissing Plaintiff's Complaint, compelling arbitration, awarding damages, fees, and costs in bringing this motion, and all other relief that the Court may deem just and proper.

Dated: July 29, 2014  PROSKAUER ROSE LLP
        New York, New York

By:   */s/ Elise M. Bloom*_____
     Elise M. Bloom
     Steven D. Hurd
     Michelle A. Annese
     Eleven Times Square
     New York, New York 10036
     Tel. 212.969.3000
     Fax 212.969.2900
     ebloom@proskauer.com
     shurd@proskauer.com
     mannese@proskauer.com
     *Attorneys for Defendant*
     INTERNATIONAL CREATIVE
     MANAGEMENT PARTNERS LLC