**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KIMBERLY BEHZADI and JASON
RINDENAU, on behalf of themselves and all
others similarly situated,

               Plaintiffs,

     v.

INTERNATIONAL CREATIVE
MANAGEMENT PARTNERS, LLC,

             Defendant.

**No: 14-cv-4382 (LGS)**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

PROCEDURAL HISTORY..................................................................................... 2

FACTUAL BACKGROUND .................................................................................. 3

    I.    ICM Assigns Interns Work that Paid Employees Would Ordinarily Perform....... 3

        A.    ICM's Internship Program Documents Show that ICM Assigned Interns Work that Benefited the Company ........................................................ 3

            1.    ICM Expects Interns to Assist Its Employees Do Their Work ...... 3

            2.    ICM Subjects Interns to the Same Policies................................... 4

        B.    Plaintiffs' Work Experiences Are Consistent with ICM's Intern Program Description ................................................................................. 4

    II.    Plaintiffs Worked With Other Interns Who Performed Work that Benefited ICM. ................................................................................. 5

    III.    The Arbitration Agreement Does Not Cover Behzadi's Claims as an Intern......... 6

ARGUMENT IN SUPPORT OF PLAINTIFFS' 216(b) MOTION................................. 7

    I.    Interns Must Be Paid the Minimum Wage Except in Very Narrow Circumstances. ................................................................................. 7

        A.    FLSA Covers Interns Unless They Fall Under *Portland Terminal*'s "Trainee" Exception................................................................................. 7

        B.    Employers Cannot Assign Interns Work that Employees Would Otherwise Perform ................................................................................. 8

    II.    Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's Remedial Goals ................................................................................. 9

    III.    Plaintiffs Meet Their Low Burden ................................................................ 10

    IV.    The Court Should Approve Plaintiffs' Proposed Notice and Notice Process....... 14

        A.    Plaintiffs' Proposed Notice Is Timely, Accurate, and Informative .......... 14

        B.    Notice Should Issue to All Interns Who Worked Within Three Years of the Filing of Plaintiffs' § 216(b) Motion ............................................. 14

C.  The Court Should Order ICM to Produce Last Known Addresses, Email Addresses, Telephone Numbers, and Social Security Numbers for Potential Opt-Ins ................................................................................. 15

ARGUMENT IN OPPOSITION TO ICM'S MOTION TO COMPEL ....................................... 16

I.  The Arbitration Agreement Does Not Cover Claims that Arose During Behzadi's Internship ......................................................................................... 16

A.  The Court Should Decide Whether the Agreement Covers Behzadi's Claims ................................................................................................... 16

B.  The Agreement Is Expressly Limited to Claims that Arose After Behzadi Was Hired As a Floater Assistant Employee ............................. 18

1.  The Agreement Refers Only to Claims that Arose During or After Behzadi's "Employment," Not During Her Internship ....... 18

2.  The Agreement Uses Prospective Language ................................ 21

II.  The Agreement Is Unconscionable Because It Bars Fee Shifting Under the FLSA and NYLL and Imposes Arbitration Fees on Plaintiff .............................. 23

III.  There Is No Statutory, Contractual, or Other Basis for Awarding ICM Fees ...... 26

CONCLUSION ....................................................................................................... 27

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Allstate Ins. Co. v. Mun*,
  751 F.3d 94 (2d Cir. 2014)................................................................23

*In re Am. Exp. Fin. Advisors Secs. Litig.*,
  672 F.3d 113 (2d Cir. 2011)..............................................................18

*Amador v. Morgan Stanley & Co.*,
  No. 11 Civ. 4326, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) .............10

*Archie v. Grand Cent. P'ship*,
  997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.).............................8

*Armendariz v. Found. Health Psychcare Serv's, Inc.*,
  6 P.3d 669 (Cal. 2000) .........................................................23, 25, 26

*Arrigo v. Blue Fish Commodities, Inc.*,
  408 Fed. Appx. 480 (2d Cir. 2011)................................................20, 21

*AT & T Techs., Inc. v. Comm'cns Workers of Am.*,
  475 U.S. 643 (1986)..........................................................................17, 18

*BG Grp., PLC v. Republic of Arg.*,
  134 S. Ct. 1198 (2014).........................................................................17

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
  622 F.3d 996 (9th Cir. 2010) ..............................................................24

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*,
  532 U.S. 598 (2001)............................................................................26

*Capsolas v. Pasta Res., Inc.*,
  No. 10 Civ. 5595, 2011 WL 1770827 (S.D.N.Y. May 9, 2011)............15

*Chavarria v. Ralphs Grocery Co.*,
  733 F.3d 916 (9th Cir. 2013) ..............................................................25

*Cronas v. Willis Group Holdings Ltd.*,
  No. 06 Civ. 15295, 2007 WL 2739769 (S.D.N.Y. 2007) .....................25

*Fraticelli v. MSG Holdings, L.P.*,
  No. 13 Civ. 6518, 2014 WL 1807105 (S.D.N.Y. May 7, 2014)............13

*Glatt v. Fox Searchlight Pictures, Inc.*,
   293 F.R.D. 516 (S.D.N.Y. 2013) ........................................................................ *passim*

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010)........................................................................................16, 17

*Grant v. Warner Music Grp. Corp.*,
   No. 13 Civ. 4449, 2014 WL 1918602 (S.D.N.Y. May 13, 2014)....................................12, 13

*Hendrick v. Brown & Root, Inc.*,
   50 F. Supp. 2d 527 (E.D. Va. 1999) .......................................................................21

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989)........................................................................................14

*Kassman v. KPMG LLP*,
   No. 11 Civ. 03743, 2014 WL 3298884 (S.D.N.Y. July 8, 2014) ......................9, 10, 12, 14

*Lloyd v. J.P. Morgan Chase & Co.*,
   No. 11 Civ. 9305, 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013)................................2

*Lloyd v. J.P. Morgan Chase & Co.*,
   No. 11 Civ. 9305, 2014 WL 2109903 (S.D.N.Y. Apr. 1, 2014)................................15

*Lou v. Ma Labs., Inc.*,
   No. 12 Civ. 05409, 2013 WL 2156316.......................................................................17, 24

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
   252 F.3d 218 (2d Cir. 2001) ...............................................................................18

*Mark v. Gawker Media LLC*,
   No. 13 Civ. 4347, 2014 WL 4058417 (S.D.N.Y. Aug. 15, 2014) ......................1, 12

*McGlone v. Contract Callers, Inc.*,
   867 F. Supp. 2d 438 (S.D.N.Y. 2012).......................................................................14

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010).................................................................................1

*O'Jeda v. Viacom, Inc.*,
   No. 13 Civ. 5658, 2014 WL 1344604 (S.D.N.Y. Apr. 4, 2014)................................13

*Patterson v. ITT Consumer Fin. Corp.*,
   14 Cal. App. 4th 1659 (1993) ...............................................................................23, 24

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) ...............................................................................24

*Russell v. Citigroup, Inc.*,
    748 F.3d 677 (6th Cir. 2014) ..............................................................20, 21, 22

*Scott v. Chipotle Mexican Grill, Inc.*,
    No. 12 Civ. 8333 (S.D.N.Y.) ...........................................................................14

*Scott v. J.P. Morgan Chase & Co.*,
    No. 13 Civ. 646, 2014 WL 338753 (S.D.N.Y. Jan. 30, 2014)...............................23

*Tech. in P'ship, Inc. v. Rudin*,
    538 F. App'x 38 (2d Cir. 2013) ........................................................................16

*Ting v. AT & T*,
    319 F.3d 1126 (9th Cir. 2003) ..........................................................................24

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985)..........................................................................................20

*Trivedi v. Curexo Technology Corp.*,
    189 Cal. App. 4th 387 (2010) ...........................................................................24

*Trompeter v. Ally Fin., Inc.*,
    No. 12 Civ. 00392, 2012 WL 1980894 (N.D. Cal June 1, 2012) .........................26

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947)..............................................................................1, 7, 11

*Wherry v. Award, Inc.*,
    192 Cal. App. 4th 1242 (2011) .........................................................................25

*Zaborowski v. MHN Gov't Servs., Inc.*,
    936 F. Supp. 2d 1145 (N.D. Cal. 2013) ..................................................2, 24, 25

*Zullo v. Superior Court*,
    197 Cal. App. 4th 477 (2011) ...........................................................................24

**STATUTES**

9 U.S.C. § 2............................................................................................................23

29 U.S.C. § 216(b) ...........................................................................................9, 14, 24

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*...........................................................18

NYLL § 198(1–a) ..................................................................................................24

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................................................................................................13

## PRELIMINARY STATEMENT

Plaintiffs Kimberly Behzadi and Jason Rindenau, unpaid interns who worked for Defendant International Creative Management Partners, LLC ("ICM"), a Hollywood talent agency, respectfully request authorization to send notice of this lawsuit to other ICM interns so that they can decide whether to join the case and stop their Fair Labor Standards Act ("FLSA") statutes of limitations from running.  In order to authorize notice at this early stage, the Court only needs to make an initial determination that Behzadi, Rindenau, and other ICM interns "may be" similarly situated.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

Plaintiffs allege that they and other ICM interns are similarly situated because ICM unlawfully failed to pay them minimum wages for the hours they worked and used their labor to replace, and/or reduce the workloads of, paid employees.  Under U.S. Supreme Court precedent and U.S. Department of Labor guidance, where interns' work provides an "'immediate advantage'" to the employer, including by "expedit[ing] the company business" or "displac[ing] . . . regular employees," the interns must be paid at least the minimum wage.  *Walling v. Portland Terminal Co.*, 330 U.S. 148, 149-50, 153 (1947); U.S. Dep't of Labor, Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act.[1]

At this early stage, Plaintiffs' declarations, ICM's "Intern Program" description, and offer letters that ICM provided to Plaintiffs are sufficient to support Plaintiffs' allegation that they and other interns were subject to the same unlawful policy of failing to pay them the minimum wage for work that otherwise would have been done by paid ICM employees.  *See, e.g., Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 WL 4058417, at *6 (S.D.N.Y. Aug. 15, 2014) (evidence that interns "performed the kinds of tasks that compensated non-exempt employees

---

[1]     Fact Sheet #71 is attached to the Declaration of Rachel Bien ("Bien Decl.") as Exhibit A.

ordinarily perform, . . . . support[ed] the complaint's core allegation that Gawker refus[es] to pay wages to its workers by designating them as interns") (internal quotation marks omitted).

The Court should deny ICM's Motion to Dismiss and Compel Arbitration of Plaintiff Behzadi's claims. ICM's "Mutual Agreement to Arbitrate All Employment-Related Disputes" (the "Agreement") does not cover Behzadi's claims as an unpaid intern because it only covers claims relating to her "employment," which both parties understood at the time they signed the Agreement to mean *after* ICM hired Behzadi as a paid "Floater Assistant." Reflecting this understanding, the language of the Agreement, which ICM drafted, is plainly prospective – not retroactive.

The Agreement is also substantively and procedurally unconscionable under California law because it imposes a cost-sharing regime that is contrary to Behzadi's right to fee-shifting under the FLSA and New York Labor Law ("NYLL"). *See, e.g., Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1153-54 (N.D. Cal. 2013) (finding fee-shifting clause unconscionable).

Finally, because ICM has moved only against Behzadi and because Rindenau did not sign any arbitration agreement, the Court should not dismiss the complaint even if it concludes that Behzadi must arbitrate her claims. Instead, it should allow the case to proceed as a collective action based on Rindenau's claims. *See Lloyd v. J.P. Morgan Chase & Co*., No. 11 Civ. 9305, 2013 WL 4828588, at *1 (S.D.N.Y. Sept. 9, 2013) (dismissing claims of certain plaintiffs who signed arbitration agreements and granting conditional certification with respect to claims of other plaintiffs).

## PROCEDURAL HISTORY

On June 17, 2014, Behzadi filed a class and collective action complaint alleging that ICM failed to pay minimum wages to her and other interns for the work that they performed during

their internships.  ECF No. 1.  On August 15, 2014, Behzadi amended her complaint, adding

Jason Rindenau as a named Plaintiff and claims under the California Labor Code and Unfair

Competition Law.  ECF No. 23.

## FACTUAL BACKGROUND

I.    **ICM Assigns Interns Work that Paid Employees Would Ordinarily Perform.**

    A.    **ICM's Internship Program Documents Show that ICM Assigned Interns Work that Benefited the Company.**

ICM runs a centralized internship program that it has described in offer letters and

program documents it provided to Plaintiffs and other interns.  *See* Bien Decl. Ex. B (Behzadi

Offer Letter); Decl. of Jason Rindenau ("Rindenau Decl.") Exs. A (Offer Letter), B (Intern

Program); Decl. of Kimberly Behzadi ("Behzadi Decl.") Ex. A (Intern Agreement).  These

documents show that interns were expected to assist ICM employees by performing the routine

work of the company, were subject to the same policy of not paying them for their work, and

were required to meet other standard prerequisites, including working certain hours and

obtaining school credit.  *Id*.

    1.    **ICM Expects Interns to Assist Its Employees Do Their Work.**

In a document titled "Intern Program," ICM states that its internships have the same

"primary focus" – "[i]nterns are first and foremost expected to assist the Agent's Assistant."

Rindenau Decl. Ex. B (Intern Program).  ICM lists the "range" of tasks that interns can

"[e]xpect" to perform in carrying out this function: "simple clerical tasks (photocopying, filing,

typing, etc.)," "helping roll calls with the Agent," or "assisting with special projects."  *Id*.  ICM

also states that it assigns tasks to interns based on "the Assistant's needs and the Agent's needs,"

as well as interns' own "abilities."  *Id*.

ICM also provided Plaintiffs with offer letters that describe the same types of tasks that they could expect to perform during their internships.  *See* Bien Decl. Ex. B (Behzadi Offer Letter); Rindenau Decl. Ex. A (Offer Letter).  These tasks include: "research, special projects, helping to compile lists for departmental distribution, script coverage, observing agents and assistants and learning how to handle administrative assistance, as needed."  Behzadi Decl. Ex. A (Intern Agreement); *see* Rindenau Decl. Ex. A (Offer Letter) (listing similar tasks).

These documents show that ICM relied on interns to provide useful assistance on its day-to-day work and gave them assignments based on its needs.  This is the opposite of what one would expect if interns provided no benefit to the company.

### 2.    ICM Subjects Interns to the Same Policies.

ICM subjected interns to the same general policies.  *See* Rindenau Decl. Ex. B (Intern Program).  First, it did not pay interns for the work that they performed during their internships.  *Id*.  Second, it required interns to intern "a minimum of 8 weeks; at least 25 hours per week."  *Id*.  Third, it required interns, as a condition of hire, to obtain school credit for their internship.  *Id*.

### B.    Plaintiffs' Work Experiences Are Consistent with ICM's Intern Program Description.

Consistent with ICM's "Intern Program" description, Plaintiffs Behzadi and Rindenau helped ICM's paid Assistants and Agents do work that they would otherwise have had to do themselves or hire paid workers to do.

Behzadi worked as an unpaid intern in New York City from January 2012 through May 2012, approximately four days a week from 10am until 6pm.  Behzadi Decl. ¶¶ 1-3.  Her duties included: "script coverage," which involved reading scripts and summarizing them for Agents; creating "coverage reports," which further condensed the information in scripts for use at casting and client meetings; doing Agents' expenses; maintaining a calendar of comedy events for

Agents; compiling contact information in a database; and performing administrative tasks, including answering the phone.  *Id*. ¶ 4.  Behzadi substituted for a paid Assistant during her internship when the Assistant was on vacation.  *Id*. ¶ 5.

Rindenau worked as an unpaid intern in Los Angeles from May 2011 through August 2011, approximately four to five days a week from 10am until 6pm.  Rindenau Decl. ¶¶ 1-3. ICM assigned him to do script coverage; perform administrative work, including printing out labels and placing them on DVDs; run errands for Agents; review client contracts; and compile information for Agents.  *Id*. ¶ 4.

## II.     **Plaintiffs Worked With Other Interns Who Performed Work that Benefited ICM**.

Plaintiffs worked with dozens of other interns who also performed work that assisted ICM's paid employees.  As an unpaid intern and later as a paid ICM Assistant, Behzadi observed more than 30 unpaid interns performing work that employees ordinarily perform, including creating coverage reports, doing expenses, and covering paid Assistants' desks.  Behzadi Decl. ¶¶ 22-23.  As a paid employee, she personally supervised approximately five unpaid interns who shouldered some of her workload and allowed her to get more work done.  *Id*. ¶ 20.

During his internship, Rindenau worked with approximately 45 other unpaid interns. Rindenau Decl. ¶ 17.  During periodic lunches, Rindenau spoke to several interns and learned that they also performed productive work for the Assistants and Agents to whom they were assigned.  *Id*. ¶ 18.  He worked alongside three to four other unpaid interns who performed the same tasks that he performed.  *Id*. ¶ 19.

**III.    The Arbitration Agreement Does Not Cover Behzadi's Claims as an Intern.**

On October 12, 2014, ICM provided Behzadi with an offer letter for a full-time paid position as a Floater Assistant ("Offer Letter").  ECF No. 17-1.  The Offer Letter stated that her "employment with ICM will commence on Monday, October 29th, 2012."  *Id*. at 2.

On November 5, 2014, Behzadi signed ICM's Arbitration Agreement, which was appended as "Appendix A" to other documents related to her employment as a Floater Assistant.  ECF No. 17-2; Behzadi Decl. ¶ 15.  The Agreement uses the present tense to describe the claims it covers and other forward-looking and limiting language.  For example, it states that it applies to disputes "*arising*" or that "*may arise*" between Behzadi and ICM, and is limited to disputes "*during or following* [Behzadi's] *employment*," or related to her "*employment* with [ICM]."  ECF No. 17-2 at 2 & § A.

When she signed the Agreement, Behzadi understood that it applied only to claims that might arise during her employment as a Floater Assistant.  Behzadi Decl. ¶ 16.  She did not believe that it applied to any claims relating to her internship, which she had concluded six months earlier.  *Id*. ¶¶ 16-17.

ICM also considered Behzadi's "employment" to have commenced on October 29, 2012.  ECF No. 17-1 at 2.  It told her in an "ICM Internship Information and Agreement" ("Internship Agreement"), which ICM required Behzadi to sign at the beginning of her internship, that she would "*not be considered an ICM employee at any point during [her] internship*."  Behzadi Decl. Ex. A (Internship Agreement) (emphasis added).

<u>**ARGUMENT IN SUPPORT OF PLAINTIFFS' 216(b) MOTION**</u>

**I.     Interns Must Be Paid the Minimum Wage Except in Very Narrow Circumstances.**

      **A.     FLSA Covers Interns Unless They Fall Under *Portland Terminal*'s "Trainee" Exception.**

The FLSA does not exempt "interns" from its coverage.  In *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), the Supreme Court held that "trainees" in a weeklong vocational course to become railroad brakemen were not "employees" of the company that provided the training because the trainees worked "solely" for their own benefit and provided "no 'immediate advantage'" to the company.  *Id*. at 152-53.  In fact, it was "undisputed" that the trainees did not "expedite the company business," and actually "impede[d] and retard[ed]" it, because regular employees were required to "stand immediately by to supervise whatever the trainees d[id]."  *Id*. at 149-50, 153.  The trainees also did not "displace any of the regular employees, who d[id] most of the work themselves."  *Id*. at 150.  Courts and the U.S. Department of Labor ("DOL") have held that *Portland Terminal*'s "exclusion from the definition of employment [for trainees] is necessarily quite narrow because the FLSA's definition of 'employ' is very broad."  Bien Decl. Ex. A (Fact Sheet) at 1; *Glatt v. Fox Searchlight Pictures*, *Inc.*, 293 F.R.D. 516, 531 (S.D.N.Y. 2013) *reconsidered in part on other grounds*, 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013) *and motion to certify appeal granted*, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013).

The DOL has developed a set of six criteria to determine whether interns at for-profit employers are trainees under *Portland Terminal* who are not covered by the FLSA ("DOL Test").  Bien Decl. Ex. A (Fact Sheet).  The presumption is that interns must be paid, unless each criterion is met:

    1.    The internship, even though it includes actual operation of the facilities of the employer, is similar to training which would be given in an educational environment;

2.      The internship experience is for the benefit of the intern;

3.      The intern does not displace regular employees, but works under close supervision of existing staff;

4.      The employer that provides the training derives no immediate advantage from the activities of the intern; and on occasion its operations may actually be impeded;

5.      The intern is not necessarily entitled to a job at the conclusion of the internship; and

6.      The employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

*Id.*

Courts have deferred to the DOL Test because it "w[as] promulgated by the agency charged with administering the FLSA and [is] a reasonable application of it."  *Glatt*, 293 F.R.D. at 532; *Archie v. Grand Cent. P'ship*, 997 F. Supp. 504, 532 (S.D.N.Y. 1998) (Sotomayor, J.) (same).

### B.      Employers Cannot Assign Interns Work that Employees Would Otherwise Perform.

According to the DOL, unpaid interns must not "perform the routine work of the business on a regular and recurring basis, and the business [should] not [be] dependent upon the work of the intern."  Bien Decl. Ex. A (Fact Sheet) at 1.  "[I]f the interns are engaged in the operations of the employer or are performing productive work (for example, filing, performing other clerical work, or assisting customers), then the fact that they may be receiving some benefits in the form of a new skill or improved work habits will not exclude them from the FLSA's minimum wage and overtime requirements because the employer benefits from the interns' work."  *Id.*

Employers cannot use interns "as substitutes for regular workers or to augment [their] existing workforce[.]"  *Id.*  "If the employer would have hired additional employees or required

existing staff to work additional hours had the interns not performed the work, then the interns

will be viewed as employees and entitled compensation under the FLSA." *Id.*

## II.   Court-Authorized Notice Is Fair, Efficient, and Advances the FLSA's Remedial Goals.

The FLSA authorizes employees to maintain collective actions to recover unpaid wages

where the employees are "similarly situated" and give their consent in writing to become a party.

*See* 29 U.S.C. § 216(b).  District courts have discretion to implement § 216(b) by facilitating

notice to potential plaintiffs.  *Kassman v. KPMG LLP*, No. 11 Civ. 03743, 2014 WL 3298884, at

*5 (S.D.N.Y. July 8, 2014) (citing *Myers*, 624 F.3d at 555 n.10).

The Second Circuit has endorsed "the two-step approach widely used by the district

courts in this Circuit and by other circuit courts" for certification of collective actions under the

FLSA.  *Id*.  "The first step involves the court making an initial determination to send notice to

potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to

whether a FLSA violation has occurred."  *Id*. (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754

F.Supp.2d 638, 644 (S.D.N.Y. 2010)).  "Once a court is satisfied that the first-stage inquiry has

been satisfied, it conditionally certifies the class and orders notice to putative class members,

who are given the opportunity to opt in."[2]  *Id.* (quoting *Myers*, 624 F.3d at 555) (internal

quotation marks omitted).

Plaintiffs face a minimal burden on this motion.  To satisfy their burden, Plaintiffs "must

make only a modest factual showing that they and potential opt-in plaintiffs together were

---

[2]      "The second step, typically taken upon the completion of discovery, requires the court to
determine, on a fuller record, . . . whether a so-called 'collective action' may go forward by
determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named
plaintiffs."  *Kassman*, 2014 WL 3298884, at *5 (quoting *Myers,* 624 F.3d at 555) (internal
quotation marks omitted).  "The action may be 'de-certified' if the record reveals that they are
not[.]"  *Id.*

victims of a common policy or plan that violated the law." *Id.* (quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted). The Second Circuit has emphasized that the standard of proof should remain "low" because "the purpose of this first stage is merely to determine *whether* similarly situated' plaintiffs do in fact exist." *Kassman*, 2014 WL 3298884, at *5 (quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted). "Because the standard at the first stage is fairly lenient, courts applying it typically grant[] conditional certification." *Amador v. Morgan Stanley & Co.*, No. 11 Civ. 4326, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (internal citation and quotation marks omitted).

At the first step, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Kassman*, 2014 WL 3298884, at *5 (internal citation and quotation marks omitted). "[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Id*. at *6 (internal citation and quotation marks omitted). "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." *Amador*, 2013 WL 494020, at *3 (internal citation and quotation marks omitted) (citing cases).

"The burden imposed at the first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are *actually* 'similarly situated.'" *Amador*, 2013 WL 494020, at *4 (internal citation, and brackets omitted).

## III.   Plaintiffs Meet Their Low Burden.

Plaintiffs' showing is sufficient to meet their light burden. Plaintiffs allege that they and other interns are similarly situated with respect to the same FLSA violation – ICM's policy of

not paying interns the minimum wage for the hours they work.  ECF No. 23 (1st Am. Compl.) ¶¶ 2, 56-69.  They also allege that they and other interns were not "trainees" under *Portland Terminal* because ICM gained an "immediate advantage" from their work and used them to replace or reduce the workloads of paid employees.  *Id.* ¶¶ 61-63.  *See Portland Terminal*, 330 U.S. at 153; *Glatt*, 293 F.R.D. at 533; Ex. A (Fact Sheet) at 1.

Specifically, Plaintiffs rely on their own declarations, in which they testified that they performed work as part of ICM's regular operations that expedited its business, including script coverage, employee expenses, and other administrative tasks, and that would have had to be performed by paid employees.  *See* Behzadi Decl. ¶ 4; Rindenau Decl. ¶ 4.  Behzadi also testified that, as a paid Assistant, she supervised interns who reduced her own workload.  Behzadi Decl. ¶¶ 20-21.

Plaintiffs have also submitted documents in which ICM described its "Intern Program" that show that it expected interns to perform the types of tasks that employees ordinarily perform, including script coverage, compiling lists, and performing administrative duties, and subjected them to the same compensation and other general policies.  *See* Bien Decl. Ex. B (Behzadi Offer Letter); Rindenau Decl. Exs. A (Offer Letter), B (Intern Program); Behzadi Decl. Ex. A (Intern Agreement).  The Intern Program described in the documents is consistent with the experiences that Plaintiffs had in two different ICM offices in New York City and Los Angeles and with the work that they observed other interns performing.  *See* Behzadi Decl. ¶¶ 4, 19-23; Rindenau Decl. ¶¶ 4, 17-19.

These documents also suggest that, even if there were some variations in interns' assignments, the variations were only at the margins because interns had the same "primary focus" – "to assist the Agent's assistant."  Rindenau Decl. Ex. B (Intern Program).  They also

suggest that ICM assigned interns work based, at least in part, on "the Assistant's needs and the Agent's needs."  *Id.*  This evidence supports certification.  *See Glatt*, 293 F.R.D. at 536 (evidence that employees "requested interns based on their 'needs,'" and "requested more when they were busier" supported class and collective certification); *Grant v. Warner Music Grp. Corp.*, No. 13 Civ. 4449, 2014 WL 1918602, at *6 (S.D.N.Y. May 13, 2014) (holding that potential "disparate factual and employment settings" among interns did not "vitiate the essence of Plaintiffs' claim, which is that all of Defendants' student interns are 'victims of a common policy to replace paid workers with unpaid interns'") (quoting *Glatt*, 293 F.R.D. at 538); *see also Kassman*, 2014 WL 3298884, at *6 ("Courts have found employees 'similarly situated' for purposes of the FLSA where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policies.") (internal quotation marks omitted).

Courts have consistently certified intern collectives based on the kinds of evidence that Plaintiffs present here.  In *Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 WL 4058417 (S.D.N.Y. Aug. 15, 2014), the court granted conditional certification to a collective of unpaid interns based on evidence that they "performed the kinds of tasks that compensated non-exempt employees ordinarily perform."  *Id.* at *6.  The evidence included the plaintiffs' declarations describing their own experiences and their observations of other interns and company documents describing interns' duties.  *Id.* at *6-7.  The court held that this evidence "support[ed] the complaint's core allegation that Gawker refus[es] to pay wages to its workers by designating them as interns."  *Id.* at *6 (internal quotation marks omitted).

In *Grant*, the court granted conditional certification to a nationwide intern collective based on declarations from the plaintiff and three opt-in plaintiffs testifying that they performed

the same types of duties that employees ordinarily perform and documents suggesting that interns were subject to the same compensation and general intern policies.  2014 WL 1918602, at *4.  The court held that, "[f]rom this evidence, it [wa]s reasonable to infer that the policy of classifying student workers as unpaid interns, and thus exempt from the FLSA's wage and overtime requirements, reflect[ed] a national, company-wide policy."  *Id.* at *5.

In *O'Jeda v. Viacom, Inc.*, No. 13 Civ. 5658, 2014 WL 1344604 (S.D.N.Y. Apr. 4, 2014), the court certified an intern collective, despite "some variance in the practices and procedures with respect to interns among Defendants' entities, departments, and locations."  *Id.* at *2.

In *Glatt*, the court certified a nationwide collective of interns who worked in Fox's offices under the FLSA's higher second stage standard based on evidence that interns were used to replace paid positions and that employees relied on interns when they were busy or in need of help.  293 F.R.D. at 538-39.  Based on this evidence, the court also certified a class of interns who worked in New York under Fed. R. Civ. P. 23.  *Id.*

Although the court did not certify the collective in *Fraticelli v. MSG Holdings, L.P.*, No. 13 Civ. 6518, 2014 WL 1807105 (S.D.N.Y. May 7, 2014), that case is distinguishable.  The plaintiffs there sought to certify a collective of interns from across more than 100 different departments without any evidence that they were similarly situated.  *Id.* at *2.  The only evidence they offered was an employee code of conduct, a time sheet with the word "intern" at the top, and a script that instructed interns on how to manage telephone calls.  *Id.* at *3.  Even the plaintiffs' own declarations described very different internship experiences.  *Id.* at *2.

Here, in contrast, Plaintiffs have offered substantial evidence through their own declarations and ICM documents that they and other interns may be similarly situated with respect to the "focus" of their internships (i.e., to assist the Agent's Assistant) and the type of

13

work they were assigned (i.e., work that employees ordinarily do).  *See* Rindenau Exs. A (Offer

Letter), B (Intern Program); Behzadi Decl. Ex. A (Intern Agreement).

**IV.    The Court Should Approve Plaintiffs' Proposed Notice and Notice Process.**

    **A.    Plaintiffs' Proposed Notice Is Timely, Accurate, and Informative.**

The Court should approve Plaintiffs' proposed Collective Action Notice and Consent to

Join form.  Bien Decl. Exs. C (Notice), D (Consent to Join Form).  The Notice is "accurate" and

"informative" and is consistent with the model notices published by the Federal Judicial Center.[3]

*See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  A very similar notice was

recently approved by the court in *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333

(S.D.N.Y.).  *See* Bien Decl. Ex. E (Order, dated June 27, 2013).

    **B.    Notice Should Issue to All Interns Who Worked Within Three Years of the Filing of Plaintiffs' § 216(b) Motion.**

The Court should authorize Plaintiffs to send notice to all interns who worked at any time

between August 26, 2011 – three years back from when Plaintiffs filed their motion – and the

present.  Courts routinely allow for tolling during the pendency of a motion for conditional

certification.  *See Kassman*, 2014 WL 3298884, at *9 (tolling statute of limitations from date on

which plaintiffs filed their motion for conditional certification); *McGlone v. Contract Callers,*

*Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("the delay caused by the time required for a

court to rule on a motion, such as one for certification of a collective action in a FLSA case, may

be deemed an extraordinary circumstance justifying application of the equitable tolling

doctrine") (citation and internal quotation marks omitted).

The notice should be sent to all interns, including those who may have signed arbitration

agreements after ICM hired them into paid positions.  Any decision regarding whether Plaintiff

---

[3]    *See* http://www.fjc.gov/ (Class Action Notices page) (last visited Aug. 26, 2014).

Behzadi must arbitrate her claims will only be binding on her because potential collective members "had no notice of [ICM's] application to compel arbitration and no right to be heard" regarding any claim by ICM that they must arbitrate their claims. *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305, 2014 WL 2109903, at *5 (S.D.N.Y. Apr. 1, 2014), *report and recommendation adopted by* 2014 WL 3537808 (S.D.N.Y. July 16, 2014) (authorizing notice to all collective members, including those who may have signed arbitration agreements).

C.     **The Court Should Order ICM to Produce Last Known Addresses, Email Addresses, Telephone Numbers, and Social Security Numbers for Potential Opt-Ins.**

If the Court grants Plaintiffs' motion, it should order ICM to produce an electronic list containing the names, last known addresses, email addresses, telephone numbers, and social security numbers of collective members within 20 days of its order, so that notice can issue promptly.  As part of this process, ICM should be required to search the files and email account of Rod Gardner, who served as an intern recruiter at ICM, *see* Rindenau Decl. Ex. B, as well as the files and accounts of any other ICM employees whose duties included intern recruitment during the relevant period, for intern contact information to the extent that ICM did not centrally maintain this information.

Because many collective members were students at the time they interned and may have lived in temporary housing, their addresses and school email addresses may be stale.  Thus, contacting them by phone and/or using skip-trace technology requiring social security numbers will likely be the best means to obtain updated addresses for them.  *See* Ex. F (*Glatt v. Fox Searchlight Pictures Inc.*, Ct. Tr., Nov. 1, 2013) 2:24-3:7, 10:9-21 (noting that interns present "special challenges with respect to just locating them" and approving request for telephone numbers and email addresses); *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2011 WL

15

1770827, at *5 (S.D.N.Y. May 9, 2011) (approving production of social security numbers for potential plaintiffs whose notices are returned as undeliverable and requiring defendants to produce telephone numbers for all potential plaintiffs).

Plaintiffs also request permission to maintain a stand-alone website where collective members can review the notice and download a copy of the consent to join form.  The *Glatt* court approved a stand-alone website for this purpose, noting that many interns are "millennials" who are more apt to review information electronically than by mail.  *See* Ex. F (*Glatt v. Fox Searchlight Pictures Inc.*, Ct. Tr., Nov. 1, 2013) 11:25-12:8.

<u>**ARGUMENT IN OPPOSITION TO ICM'S MOTION TO COMPEL**</u>

**I.     The Arbitration Agreement Does Not Cover Claims that Arose During Behzadi's Internship.**

The Arbitration Agreement does not cover claims that arose during Behzadi's unpaid internship because neither party intended it to do so.  The parties consented to a prospective arbitration provision, beginning with Behzadi's formal hiring as a paid "Floater Assistant" on October 29, 2012.

**A.     The Court Should Decide Whether the Agreement Covers Behzadi's Claims.**

As an initial matter, ICM concedes that the Court should determine the proper scope of the Agreement.  *See, e.g.,* ICM Br. at 8 ("In deciding a motion to compel arbitration . . . , *this Court must consider four factors* . . . [including] whether the scope of th[e] agreement encompasses the plaintiff's claims").  Moreover, by raising the issue in Court and asking the Court to decide it, ICM has waived any argument that an arbitrator should decide it.  *Cf. Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x 38, 39 (2d Cir. 2013) (right to arbitrate can be waived).

In any event, it is well-established that "it is the court's duty to . . . determine whether the parties intended to arbitrate grievances concerning a particular matter."  *Granite Rock Co. v. Int'l*

16

*Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (internal quotation marks omitted).  "[C]ourts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability.' These include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'"  *BG Grp., PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1206-07 (2014).  Arbitration is appropriate "only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock*, 561 U.S. at 297.

"Unless the parties *clearly and unmistakably* provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  *AT & T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 649 (1986) (emphasis added).  Here, the parties did not "clearly and unmistakably" reserve questions of arbitrability for the arbitrator.  *Id*.  The question "'whether an arbitration clause . . . applies to a particular type of controversy,'" is not the type of "*procedural* gateway" matter that "courts presume that the parties intend arbitrators, not courts, to decide," such as "claims of waiver, delay, or a like defense to arbitrability," or "prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate."  *BG Grp.*, 134 S. Ct. at 1207 (internal quotation marks omitted).

The Agreement's generic reference to JAMS's "rules," without specifically referencing any particular rule or providing a copy of the rules, also does not provide a "clear[] and unmistakabl[e]" basis for concluding the parties intended to submit substantive arbitrability questions to the arbitrator.  *AT&T Techs*, 475 U.S. at 649; *c.f. Lou v. Ma Labs., Inc.*, No. 12 Civ. 05409, 2013 WL 2156316, at *3 (N.D. Cal. May 17, 2013) ("[H]ow was the employee supposed to know what 'JAMS' was? . . . [L]awyers and judges . . . know what JAMS is but the employees in question would not" because "the arbitration rules . . . were not provided to the employee, so it

would have been unreasonable to expect that the employee understood to what she was
obligating herself").

    **B.**    **The Agreement Is Expressly Limited to Claims that Arose After Behzadi Was Hired As a Floater Assistant Employee.**

Neither Behzadi nor ICM agreed to submit claims that accrued during Behzadi's
internship to arbitration.  Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., "arbitration is a
matter of contract and a party cannot be required to submit to arbitration any dispute which he
has not agreed so to submit." *AT & T Techs.*, 475 U.S. at 648 (internal quotation marks omitted).
Only disputes that are "on [their] face within the purview" of the agreement are subject to
arbitration. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc*., 252 F.3d 218, 224
(2d Cir. 2001) (internal quotation marks omitted).  On the other hand, where "'it may be said
with positive assurance'" that an arbitration clause does not extend to certain claims, the court
*may not* compel arbitration of such claims on a non-consenting party. *In re Am. Exp. Fin.
Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (quoting *AT & T Techs.*, 475 U.S. at 650).

Here, there is a "positive assurance" that both parties intended the Agreement to cover
claims that arose after October 29, 2012, the date that Behzadi began her employment as a paid
Floater Assistant.  Neither party intended to extend the Agreement to claims that arose when
Behzadi was an unpaid intern.

    **1.**    **The Agreement Refers Only to Claims that Arose During or After Behzadi's "Employment," Not During Her Internship.**

The Agreement, which ICM drafted, applies only to claims that arose during Behzadi's
"employment" with ICM, as the term "employment" was understood by the parties at the time.
The first sentence of the Agreement specifically refers to claims that may arise "during or
following my *employment* with the Company that relate to the employment relationship."  ECF

No. 17-2 at 2 (emphasis added).  The Agreement goes on to state, under the heading: "Claims Covered by the Agreement," that it covers "Any and all disputes arising out of or in any way *relating to my employment* with [ICM]."  *Id*. § A.

These references to Behzadi's "employment" do not include Behzadi's internship because, at the time they signed the agreement, both parties considered Behzadi's hire as a paid Floater Assistant to be the beginning of Behzadi's "employment" with ICM.  ICM admits this in its moving brief: "Plaintiff signed the Arbitration Agreement on or about November 6, 2012 . . . *and began her employment with ICM*."  ICM Br. at 7 (emphasis added).

Two other documents also demonstrate that ICM never intended the Agreement to cover claims arising during Behzadi's internship.  One document, the October 12, 2012 Offer Letter states that Behzadi's "*employment* with ICM *will commence* on Monday, October 29th, 2012," ECF No. 17-1 at 2 (emphasis added).  The other, the Internship Agreement, which ICM required Behzadi to sign at the beginning of her internship, states that Behzadi "*will not be considered an ICM employee* at any point during [her] internship."  Behzadi Decl. Ex. A.

Based on the language of the Agreement, the Offer Letter, and the Internship Agreement, all of which ICM drafted, ICM plainly did not intend Behzadi's internship to be part of her "employment."  Now, however, in a *post hoc* effort to force Behzadi's claims out of Court, ICM tries to have it both ways.  On the one hand, ICM characterizes Behzadi's period working as an unpaid intern as part of her "employment," and, on the other hand, defends against Behzadi's minimum wage claim by denying that she was an "employee" during her internship.  *See* ICM Br. at 7-9; ECF No. 16-2.

Likewise, at the time Behzadi signed the Agreement, relying on ICM's representations, Behzadi believed that it covered only claims that would accrue during and after her employment

as a Floater Assistant.  Behzadi Decl. ¶ 18.  *See Russell v. Citigroup, Inc.*, 748 F.3d 677, 680 (6th Cir. 2014) (citing the plaintiff's "state of mind" when he signed the arbitration agreement to interpret its scope).  ICM has not offered evidence that it *did* expect the Agreement to cover claims that accrued during Behzadi's internship.  "In the final analysis, that leaves a situation in which one party [Behzadi] certainly and the other party [ICM] likely expected the contract to govern only lawsuits still to come.  This common understanding fixes the meaning of the contract."  *Id*. at 680-81 (citing Restatement (Second) of Contracts § 201(1) (1981)).

The fact that Behzadi is seeking minimum wages for her work as an intern is irrelevant to her state of mind when she signed the Agreement.  A worker's subjective belief about her status under the FLSA does not determine whether she is entitled to minimum wages.  The standard is objective and based on the economic reality of the relationship.  *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301-02 (1985).  In *Alamo*, for example, the workers "vehemently protest[ed]" that they were entitled to minimum wages, claiming they were volunteers motivated by their own religious purposes.  *Id*. at 302.  The economic reality, however, showed that they were in fact economically dependent on the employer for whom they worked staffing its businesses and allowing it to profit.  *Id*. at 292-94, 301.  The Supreme Court held the "[t]he purposes of the [FLSA] require that it be applied even to those who would decline its protections.  If an exception to the Act were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act."  *Id*. at 302.

*Arrigo v. Blue Fish Commodities, Inc*., 408 Fed. Appx. 480 (2d Cir. 2011), a non-precedential case on which ICM relies, ICM Br. at 10-11, is easily distinguished.  In *Arrigo*, the

arbitration agreement was executed "three months into [plaintiff's] employment," as part of a continuing relationship that was undisputedly an employment relationship.  *Id*. at 481.  The issue was whether the agreement covered claims that arose during the first three months of the plaintiff's employment, before the agreement was signed.  *Id*.  Here, ICM maintained that Behzadi's internship *was not* an employment relationship and the parties' Agreement was signed six months after Behzadi's unpaid internship ended when she began a new relationship with the company as a paid Floater Assistant.

### 2.    The Agreement Uses Prospective Language.

The Agreement uses language that courts have held reflects an agreement to arbitrate prospective claims only.  Specifically, the Agreement exclusively refers to claims that "*may arise*" between the parties, and to "all disputes *arising* . . . ."  ECF No. 71-2 at 2, § A (emphasis added).

In *Russell v. Citigroup, Inc.*, the Sixth Circuit held that almost the same language in an arbitration clause reflected an intention to cover claims prospectively – not retroactively.  748 F.3d at 679 (agreement that applied to "'all employment-related disputes . . . which . . . *arise* between you and Citi'" covered only claims that arose after it was signed) (emphasis added); *see also Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 533-34 (E.D. Va. 1999) (holding that the use of the word "arising" "does not evince an agreement to arbitrate pre-existing disputes," but instead "speaks in the present tense or connotes the future").  According to the Sixth Circuit, "[t]he use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggests that the contract governs only disputes that begin—that arise—in the present or future.  The present tense usually does not refer to the past."  *Russell,* 748 F.3d at 679.

In addition, as in *Russell*, the preamble of the Agreement "exudes prospectivity."  *Id*. at

680.  It states that the parties:

> [R]ecognize that disagreements and disputed claims *may arise* between us during
> or following my employment . . . that relate to the employment relationship . . . .
> As a result, we agree to enter into this [Agreement] . . . .

ECF No. 17-2 at 2.  In *Russell*, the Sixth Circuit held that the use of the phrase "may arise" with

respect to disputes covered by an arbitration agreement is forward-looking.  748 F.3d at 680.

The use of the "auxiliary verb 'may' signals a hazard that is yet to come rather than an incident

that has come to pass."  *Id*.

The fact that the Agreement purports to cover "any and all disputes" also does not

support ICM's *post hoc* argument that it intended the Agreement to apply retroactively.  The

Sixth Circuit rejected this argument in *Russell*.  In that case, Citicorp argued that language in its

arbitration agreement covering "*all* employment-related disputes ... which ... arise between

[Russell] and Citi" applied to both past and future claims.  *Id*. at 681.  The Sixth Circuit held that

"general words like 'all'" must be limited by their context:

> We know from context—from the use of "arise," from the preamble and from the parties'
> probable expectations—that the contract refers to all future lawsuits, not all lawsuits from
> the beginning of time to the end.

*Id*.

Here, we know from context – from the Agreement's use of "may arise" and "arising,"

from ICM's representations to Behzadi that it did not consider her to be its employee during her

internship, and from Behzadi's own expectations – that the Agreement covers disputes *after*

Behzadi began working as a paid employee of the company, "not all [disputes] from the

beginning of time to the end."  *Id*.

II.     **The Agreement Is Unconscionable Because It Bars Fee Shifting Under the FLSA and NYLL and Imposes Arbitration Fees on Plaintiff.**

The Agreement is unenforceable because, under the applicable state law incorporated by the FAA, it is both procedurally and substantively unconscionable.  Specifically, the Agreement imposes a cost-sharing regime that is contrary to the fee-shifting provisions under both the FLSA and NYLL.  Courts have routinely refused to enforce arbitration agreements on this basis.

The FAA declares that arbitration clauses in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under this section, the Court applies *state* law principles of contract law to decide whether the arbitration clause is enforceable, not federal law, as ICM suggests.  *See* ICM Br. at 6.  *See Allstate Ins. Co. v. Mun*, 751 F.3d 94, 97 (2d Cir. 2014) (applying state law); *Scott v. J.P. Morgan Chase & Co.*, No. 13 Civ. 646, 2014 WL 338753, at *9 (S.D.N.Y. Jan. 30, 2014) (same).

The Agreement provides for California choice of law, *see* ECF No. 17-2 § F, and ICM assumes that, if state law applies, the correct forum's law is California.  *See* ICM Br. at 6. Under California law, both procedural and substantive unconscionability must be present for an arbitration agreement to be unenforceable.  *Armendariz v. Found. Health Psychcare Serv's, Inc.*, 6 P.3d 669, 690 (Cal. 2000).  To determine whether an arbitration clause is unconscionable, courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id*.

Procedural unconscionability "focuses on the factors of oppression and surprise."  *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993) (citations omitted).  A contract is oppressive where "there is no real negotiation of contract terms because of unequal

bargaining power." *Id*. (citation omitted).  A contract leads to "surprise" where "the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id*.

A contract is substantively unconscionable where it "allocates the risks of the bargain in an objectively unreasonable or unexpected manner." *Id*.

Here, the Agreement is both procedurally and substantively unconscionable.  It is procedurally unconscionable because it is a contract of adhesion provided to Behzadi on a take it or leave it basis and was hidden in a prolix form that ICM drafted and that it provided to her as "Appendix A" to a number of other employment documents.  Behzadi Decl. ¶ 15.  Under very similar circumstances, courts have held agreements to be procedurally unconscionable.  *See, e.g.,* *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*., 622 F.3d 996, 1004-06 (9th Cir. 2010); *Ting v. AT & T*, 319 F.3d 1126, 1148-49 (9th Cir. 2003); *Lou*, 2013 WL 2156316, at *2-3.

ICM also failed to include the rules governing the arbitration along with the Agreement, which California law also regards as procedurally unconscionable, creating the risk of surprise and oppression.  *See, e.g., Pokorny v. Quixtar, Inc*., 601 F.3d 987, 997 (9th Cir. 2010); *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 485-86 (2011); *Trivedi v. Curexo Technology Corp*., 189 Cal. App. 4th 387, 393 (2010); *Lou*, 2013 WL 2156316, at *3-4.

The Agreement is substantively unconscionable because it does not provide for fee shifting to the prevailing plaintiff, a significant abridgement of Behzadi's rights under the FLSA and NYLL.  *See* 29 U.S.C. § 216(b) ("[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); NYLL § 198(1–a) ("the court shall allow such employee . . . to recover all reasonable attorney's fees"); *see, e.g., Zaborowski*, 936 F. Supp. 2d at 1153-54 (finding fee-

shifting clause unconscionable).  The Agreement, *at most*, authorizes fee-shifting only under *California* law (*i.e.*, "[t]he arbitrator shall have the authority to award all damages or other relief provided by California law").  ECF No. 17-2 § B.  It does not include comparable language under federal or New York law.  To the contrary, it directs the arbitrator that the parties "are responsible for [their] own attorneys', expert, witness and similar fees in any case."  *Id*.

The Agreement also requires cost-sharing, imposing significant up-front expenses for Behzadi.  *Id*. (unless otherwise required, "the Company and [employee] will share equally the expense of the administrative costs and the arbitrator's fees . . . .").  This is unconscionable under California law.  *See Chavarria v. Ralphs Grocery Co.,* 733 F.3d 916, 927 (9th Cir. 2013) ("Ralphs has constructed an arbitration system that imposes non-recoverable costs on employees just to get in the door"); *Armendariz*, 6 P.3d at 685-89 (cost-sharing provisions made agreement unconscionable).  Although the Agreement provides that ICM will pay all costs "to the extent it is required to do so by California law," it does not define what law applies.  At best, this means that the parties can argue before the arbitrator whether ICM must pay arbitration fees and costs.  *Wherry v. Award, Inc*., 192 Cal. App. 4th 1242, 1249 (2011) (while "Defendants maintain that the arbitration panel 'is able to award costs and attorney['s] fees consistent with *Armendariz*' . . . nowhere in the agreements or the arbitration manual is that protection provided") (quotation marks omitted).

Finally, the Agreement does not mention the FLSA or state wage-and-hour laws, so Behzadi was not put on notice that she was waiving a judicial forum for these claims.  *See* ECF No. 17-2 § A.  *See Cronas v. Willis Group Holdings Ltd.*, No. 06 Civ. 15295, 2007 WL 2739769, at *10 (S.D.N.Y. 2007) ("courts have required employees to arbitrate [particular statutory] claims only where the arbitration clause specifically *placed the employee plaintiff on notice* that

he or she was waiving his or her right to bring [the particular claim] in the federal courts")
("internal quotation marks omitted).

      Where, as here, an arbitration agreement contains two or more unconscionable terms, California courts do not salvage them through severing or blue-penciling the offending terms. Instead, they recognize that blue-penciling enables employers and others to draw up patently one-sided, unlawful agreements, only to abandon them opportunistically in litigation. *See Armendariz*, 6 P.3d at 697-98; *Trompeter v. Ally Fin., Inc*., No. 12 Civ. 00392, 2012 WL 1980894, at *7 (N.D. Cal June 1, 2012) (because "[t]here are multiple unconscionable provision[s] in the agreement . . . the agreement is 'tainted with illegality,' and to enforce it would encourage overreaching by creditors drafting consumer contracts"). Because the Agreement contains several unconscionable terms, particularly the fee and cost-splitting provisions and the limitation on remedies, it cannot be enforced or rescued through judicial redrafting under California law.

**III.    There Is No Statutory, Contractual, or Other Basis for Awarding ICM Fees.**

      The Court should reject ICM's effort to intimidate Behzadi by asking the Court to award its fees and costs on this motion. ICM Br. at 17-18. ICM cites no statutory, contractual, or case authority to support it demand. *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (under the "American rule," fees and costs are only recoverable from an adverse party if authorized by statute or agreement). In any case, there are no grounds for awarding ICM the relief it seeks. Behzadi presents well-founded arguments in opposition to the enforcement and scope of the Agreement, well inside the bounds of good faith and any other legal standard that might apply.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the following Collective: all persons who have worked as interns for ICM between August 26, 2011 and the date of final judgment in this action, who were not paid the minimum wage for all hours worked, and who elect to join the action; (2) approve Plaintiffs' proposed Collective Action Notice and Consent to Join form, attached as Exs. C & D to the Bien Decl., and approve their proposed notice process; (3) order ICM to produce a computer-readable data file within 20 days of any order granting conditional certification that contains the names, last-known mailing address(es), last-known telephone number(s), last-known email address(es), and social security numbers for all Collective Members; (4) authorize Plaintiffs to post the Collective Action Notice and a downloadable Consent to Join form on a stand-alone website; and (5) deny ICM's motion to dismiss and compel arbitration.

Dated:  New York, New York
       August 26, 2014

                Respectfully submitted,
                **OUTTEN & GOLDEN LLP**

                By:

                /s/ Rachel Bien
                Rachel Bien

                **OUTTEN & GOLDEN LLP**
                Justin M. Swartz
                Rachel Bien
                Sally Abrahamson
                3 Park Avenue, 29th Floor
                New York, New York 10016
                Telephone:  (212) 245-1000

                ***Attorneys for Plaintiffs***