IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY BEHZADI and JASON RINDENAU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL CREATIVE MANAGEMENT PARTNERS, LLC,<br><br>Defendant. | 14 Civ. 4382 (LGS)<br><br>**DECLARATION OF<br>KIMBERLY BEHZADI** |

I, Kimberly Behzadi, declare, upon personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the following is true and correct:

**My Internship**

1. I worked as an unpaid intern for International Creative Management Partners, LLC ("ICM") from approximately January 2012 through approximately May 2012 in New York, New York.

2. I worked approximately four days a week.

3. I typically started work in the morning at approximately 10 a.m. and worked until approximately 6 p.m.

4. As an intern, my duties included, but were not limited to:

    a. creating "script coverage," which involved reading scripts and summarizing them for Agents;

    b. creating "coverage reports," which broke down and condensed information about scripts such as their title, author, producer, and shooting location, and were used during casting and client meetings;

    c. maintaining the "comedy calendar," a weekly email of comedy events that was sent to agents and assistants who were actively involved in representing and scouting new talent;

    d. creating expense reports for agents;

    e. compiling casting directors' contact information; and

    f. performing administrative tasks, such as answering agents' telephone calls.

5. During my unpaid internship, I substituted for a paid Assistant for approximately five days while the Assistant was out of the office on vacation.

6. The work that I did during my internship benefited ICM because the tasks would have otherwise had to be done by Agents or by paid Assistants.

7. I know this because, when I became an Assistant, I assigned interns some of my work. As an intern, I saw Assistants performing some of the same tasks that I performed. I also substituted for an Assistant when she was on vacation.

8. I never impeded the work of ICM during my internship. The Agents and Assistants that I worked for were generally hands-off and expected me to complete my assignments independently.

9. The time that the Agents and Assistants took to explain my assignments was no greater than what I would expect them to do for a regular employee.

10. The benefits that I gained from my internship were the same types of benefits that I would expect to receive from a regular job. For example, I learned how to create "coverage reports" and I could list my work at ICM on my resume.

11. The training that I received during my internship was gained from doing the work on-the-job.

2

**My Job as an Assistant**

12. In November 2012, ICM hired me as a "floater assistant." In this job, I was not assigned to a particular Agent, but floated from desk to desk assisting with Agents' needs.

13. In approximately February 2013, ICM promoted me to an Assistant position. In this role, I reported to two Agents.

14. I was an Assistant until December 2013 when I was laid off.

15. As a condition of being hired as a floater assistant, ICM required me to sign several documents, including a document that it drafted called "Mutual Agreement to Arbitrate All Employment-Related Disputes" ("Agreement") that required me to arbitrate "disputes" arising "during or after" my "employment" at ICM.

16. It was my understanding that the Agreement covered only disputes that arose during or after ICM hired me as a floater assistant. This was my understanding because, before that time, when I was an unpaid intern, ICM told me that it did not consider me to be an employee of the company.

17. In fact, ICM told me that it did not consider me to be "employed" by the company in the "ICM Internship Information and Agreement" that it required me to sign as a condition of becoming an unpaid intern. A true and correct copy of the agreement is attached hereto as **Exhibit A**.

18. ICM did not require me to sign an arbitration agreement as a condition of becoming an unpaid intern or at any point during my internship.

**Other ICM Interns**

19. When I was an intern, I worked with approximately ten other interns who also performed productive work for their supervisors.

3

20. During my time as a paid Assistant, ICM assigned five unpaid interns to work under me.

21. The interns shouldered some of my workload and allowed me to work fewer hours.

22. As an Assistant, I observed approximately 30 interns working at ICM in New York during the summer of 2013.

23. I saw these interns create coverage reports, do monthly expense reports, update and reformat resumes, update client profiles, update IMDBPro (an internet movie database), and cover paid assistants' desks while the assistants were on their lunch breaks.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
August 26, 2014

_____
Kimberly Behzadi

4