IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY BEHZADI and JASON RINDENAU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL CREATIVE MANAGEMENT PARTNERS, LLC,<br><br>Defendant. | 14 Civ. 4382 (LGS)<br><br>**DECLARATION OF JASON RINDENAU** |

I, Jason Rindenau, declare, upon personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the following is true and correct:

**My Duties as an Unpaid Intern**

1. I worked as an unpaid intern for International Creative Management Partners, LLC ("ICM") from approximately May 2011 through August 2011 in Los Angeles, California.

2. I worked approximately four to five days a week.

3. I typically started work in the morning at approximately 10 a.m. and worked until approximately 6 p.m.

4. As an intern, my duties included, but were not limited to:

    a. creating "coverage reports," which broke down and condensed information about scripts such as their title, author, producer, and shooting location, and were used during casting and client meetings;

    b. reviewing client contracts;

    c. doing administrative work, including photocopying and printing out and applying labels to DVDs;

    d. going on personal errands for agents; and

    e. compiling information for agents.

5. The work that I did during my internship is consistent with the offer letter that ICM provided to me before I started. In the offer letter, ICM told me that my duties would include, "research, rolling calls, database entry, calendar preparation, correspondence, compiling lists for departmental distribution, filing, script coverage and breakdowns and any other administrative duties as needed." A true and correct copy of my offer letter is attached hereto as **Exhibit A**.

6. The work that I did benefited ICM because the tasks would have otherwise had to be done by Agents or by paid Assistants.

7. I never impeded the work of ICM during my internship. The Agents and Assistants that I worked for were generally hands-off and expected me to complete my assignments independently.

8. The time that the Agents and Assistants took to explain my assignments was no greater than what I would expect them to do for a regular employee.

9. The benefits that I gained from my internship were the same types of benefits that I would expect to receive from a regular job. For example, I learned how to create "coverage reports" and could list my work at ICM on my resume.

10. The training that I received during my internship was gained from doing the work on-the-job.

**ICM's "Intern Program"**

11. ICM provided me with a document called "Intern Program" that describes the "Requirements of an ICM Internship" and "What to Expect as an ICM Intern." A true and correct copy of the document is attached hereto as **Exhibit B**.

2

12. According to the document, "Interns are first and foremost expected to assist the Agent's Assistant. That is the primary focus of the internship."

13. According to the document, interns' duties "can range from simple clerical tasks (photocopying, filing, typing, etc.) to helping to roll calls with the Agent or assisting with special projects."

14. According to the document, an intern's duties depend on their "abilities, the Assistant's needs and the Agent's needs."

15. According to the document, all interns must: intern at least 8 weeks for at least 25 hours a week and be eligible to receive school credit.

16. According to the document, "All internships at ICM are unpaid."

**Other ICM Interns**

17. During the summer when I interned, there were approximately 45 other interns who interned at the same office.

18. I talked to other interns during periodic lunches about their duties. These other interns described doing productive work that benefited ICM.

19. I worked with approximately 3-4 other interns in the same department who performed the same or very similar duties that I performed.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
August 15, 2014

Jason Rindenau

3