UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

`- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X`

KIMBERLY BEHZADI and JASON        :
RINDENAU, on behalf of themselves and all    :      Case No.:  14-CV-4382 (LGS)
others similarly situated,                   :
                                         :
               Plaintiffs,      :      **ECF Case**
                                         :
     v.                                    :
                                         :
INTERNATIONAL CREATIVE          :
MANAGEMENT PARTNERS, LLC,       :
                                         :
               Defendant.       :

`- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X`

## DECLARATION OF PATRICK CADIGAN

I, PATRICK CADIGAN, hereby declare and state the following true facts:

     1.      I am of legal age and competent to make this Declaration, and have personal knowledge of the facts set forth in this Declaration.

     2.      I was an intern at International Creative Management Partners LLC ("ICM") during July and August of 2012 in the Motion Picture Talent Department of ICM's New York office.  The Motion Picture Talent Department represents on-screen talent.

     3.      I attended Quinnipiac University, where I pursued degrees in Public Relations and Legal Studies.

     4.      I was always interested in working for a talent agency and my career goal was (and still is) to become an agent, so when I learned about ICM's internship opportunities from a friend, I was immediately interested in applying.  After submitting my resume for an internship at ICM's New York office and going through the interview process, I was offered the opportunity to spend July and August of 2012 as an intern at ICM.  I was advised and understood that the internship was unpaid and that ICM required its interns to receive academic credit.  I was

also told that the internship opportunity would be a learning experience and that interns were not permitted to run errands during their internship.

5.      I received academic credit from Quinnipiac University for my internship with ICM; in fact, completion of an internship was a required in order to graduate.  In order to receive academic credit, Quinnipiac University required that I complete a journal entry each week and write a dissertation at the conclusion of my internship explaining the projects I had completed and what I had learned.

6.      During my internship, I was primarily supervised by two Assistants, Sarah Kelly and Francis Chervenak, who worked for Agents Adam Schweitzer and Josh Pearl.  I spent the majority of my internship completing projects assigned by Ms. Kelly.

7.      I was exposed to and given the opportunity to contribute to very exciting and interesting projects that focused on film during my internship.  For example, during my internship, I was assigned script coverage, which involves reading a script, breaking down and drafting a brief synopsis of the characters, drafting a brief summary of the script, and providing comments about what I liked and did not like about the script.  Some of the scripts that Ms. Kelly assigned to me were scripts that she was simultaneously reading herself.  Other scripts that Ms. Kelly assigned to me were old scripts for which she had previously drafted coverage.

8.      Ms. Kelly always provided me with feedback and critiques on my script coverage. She would sit with me and discuss what makes coverage good.  We would also compare the coverage that I drafted with her coverage and discuss the differences between the two.

9.      During my internship, I was also given the opportunity to shadow the assistants. One opportunity which was very educational was shadowing Ms. Kelly as she mediated a

situation between an actor's manager and the agent.  As a result, I learned a lot about interacting with an actor's manager and how to effectively mediate a situation.

10.     One project that I did for Ms. Chervenak, which I did not do for Ms. Kelly, was the preparation of the weekly comedy calendar, which required that I research comedy shows at various New York comedy clubs and create a calendar of those shows.

11.     I performed different tasks for Ms. Kelly and Ms. Chervenak, each of whom had their own management style.  The kind of task I was doing and the personal style of each assistant also impacted my experience.

12.     I also did projects for other departments, such as the Publishing Department.  In addition, I had the opportunity to meet with three or four agents to discuss what they loved about their job and how they became agents and to discuss general career and industry advice.  These meetings were opportunities for me to learn from others in the industry.

13.     During my internship, I also attended weekly luncheon seminars.  ICM would invite speakers to each lunch and interns were provided the opportunity to ask questions.  I found those lunches to be extremely valuable.

14.     My internship at ICM was extremely educational and beneficial to me and my career.  It gave me the chance to learn about the talent industry – something I had never experienced during any of my academic studies.

15.     I feel strongly that you get out of your experience as an intern what you put into it.  I think your attitude, determination, motivation, and willingness to learn all determine what you get out of it.  My internship experience exceeded my expectations.

16.     I am now employed with ICM as an Assistant in the Motion Picture Literary Department in ICM's Los Angeles office.  The things that I learned during my internship have

been completely transferrable to my job now, and I have been able to use the skills and knowledge I gained during my internship to help me in my job.

17.     I have much more responsibility as an Assistant than I ever had as an intern at ICM.

18.     As an employee at ICM, I did not assign any projects to the interns assigned to my department this summer.  I did not assign projects to interns because I believe that using interns does not alleviate my own workload.  Rather, I feel that assigning projects to interns would take time away from my own work because I would have to explain the project to the intern, review the intern's project once it was completed, and provide the intern with feedback.

**Voluntariness of Statement**

19.     My participation in the interview during which the information for this statement was gathered, on August 29, 2014, and my decision to sign this statement on the date indicated below, were both completely voluntary.

20.     I understand that the attorneys with whom I spoke represent ICM, and do not represent me individually.

21.     Before I provided the information for this statement during an interview with an attorney for ICM, certain information was communicated clearly to me, including that:  my participation in the interview was completely voluntary; no adverse employment consequence would result and I would not be retaliated against in any way if I declined to participate; I would not receive any positive employment consequence or other benefit by participating; the interview was part of a fact gathering process to aid ICM in preparing its defense of the litigation; the information learned during the interview might be used in the litigation; the individuals who had commenced the litigation were attempting to represent a class of all former ICM interns; and

4

because I am a member of the group that could join in the lawsuit against ICM, my interests could be adverse to those of ICM.

22.     I was also asked if I was represented by counsel (I am not); I was informed that I could decide to stop the interview at any time if I changed my mind and no longer wished to participate; and I was instructed that I had the right to retain my own attorney before deciding to participate in the interview.

23.     After hearing and understanding the above information, I made a voluntary decision to participate and to provide the information for this statement.

24.     In addition, before signing below, I reviewed the contents of this statement to make sure it was completely accurate.  I was offered the opportunity to make any changes in the wording or the substance, but chose not to because it was accurate.


I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.


Dated: September 9, 2014
       Los Angeles, California

PATRICK CADIGAN

5