UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |  |
|---|---|---|
| KIMBERLY BEHZADI and JASON RINDENAU, on behalf of themselves and all others similarly situated, | : : : : | Case No.: 14-CV-4382 (LGS) |
| Plaintiffs, | : : | **ECF Case** |
| v. | : : : | **DECLARATION OF JAMIE HERSKOWITZ** |
| INTERNATIONAL CREATIVE MANAGEMENT PARTNERS, LLC, | : : : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I, JAMIE HERSKOWITZ, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am of legal age and competent to make this Declaration, and have personal knowledge of the facts set forth in this Declaration.

**Background**

2.      I was employed by International Creative Management Partners LLC ("ICM") from April 2011 until July 2014 as a Human Resources Specialist in the Human Resources Department, and then left to pursue other career opportunities.  During my employment with ICM, I worked out of ICM's offices in New York.

3.      As a Human Resources Specialist, my responsibilities included all Human Resources processes that related to employees, such as employee relations, performance improvement, compensation, and benefits.

4.      I also had direct involvement in ICM's internship experience in New York until July 2014, when I resigned my employment.  Thus, I have personal knowledge of many of the

policies and practices that have applied to internships at ICM since August 26, 2011, the beginning of the relevant time period in this lawsuit.

**ICM's Various Offices and Departments Provide a Variety of Intern Opportunities**

5.      Since August 26, 2011, ICM has hosted over 100 interns at its location in New York across various different departments.

6.      For instance, ICM's New York office houses the following departments: Motion Picture Talent, Motion Picture Literary, Publishing, Concerts, Theater, International TV/Media, and Global Branding Entertainment.

7.      Each department is unique and has its own culture, thereby providing interns with varied experiences.

**The Role of Human Resources in New York**

8.      The New York-based Human Resource team's involvement in recruiting interns is limited to administrative functions for internships based in the New York office.  Human Resources had no involvement in determining the content of any internship and did not dictate to any department or agent whether to have interns, how many to host, or what the interns do or learn.

9.      The recruitment process in the New York office varied depending upon the semester for which we were recruiting.

10.      For example, we typically received hundreds of good recommendations from agents, assistants, and business contacts for summer internships.  Therefore, we rarely posted summer internship opportunities.  On occasion, however, ICM's New York office would post internship opportunities for the seasonal internships (the summer and fall semesters).

11.     Typically, Human Resources would interview all candidates for summer internship opportunities and would make the selection decisions. Sometimes, however, agents or assistants would interview a prospective intern and offer the individual an internship opportunity on the spot, without consulting with Human Resources. The agent or intern would then inform Human Resources that he/she had extended an internship opportunity. By contrast, selection decisions for fall/spring internships were typically made by the agents or assistants, with less involvement from Human Resources.

12.     After interns are selected, Human Resources provides limited administrative support to the individual departments. Human Resources also ensures that interns submit documentation from an accredited college or university evidencing that they are eligible to receive academic credit for the internship experience.

13.     During the summer internship experience, I would typically organize a weekly lunch for the interns, during which internal and external speakers would meet with the interns. The interns would have an opportunity to ask the speakers questions. Weekly lunches were less frequent during the fall and spring semester internships, since ICM hosted fewer interns during those semesters.

14.     The intern experience in ICM's New York and Los Angeles offices operate independently from one another. The recruitment process and all other administrative and Human Resources tasks in New York and Los Angeles are handled locally by the New York and Los Angeles offices themselves. Each office handles its own recruitment process and manages its interns independently and in its own way.

**Academic Credit Requirement**

15.    In my experience at ICM, the colleges and universities which ICM's academic interns attended granted academic credit for the internships based on a recognition, among other things, that certain internships would have educational value to a student's studies and/or be beneficial to a student's studies.

16.    Some colleges and universities also had their own requirements that the interns needed to satisfy before they could receive academic credit for the internships, such as requiring the intern to write a paper.  Other colleges and universities required that ICM complete a feedback and provide information regarding the intern's hours and the projects he/she worked on during the internship.  Some had no requirements at all, other than completion of the internship.

**Internship Content Is Developed By Each Assistant In Each Department, Without Any Centralized Oversight**

17.    Each department in ICM's New York office has its own operating structure which enables it to handle day-to-day business on its own.  Each department coordinator, agent, and/or assistant chooses the tasks to assign to interns, and decides how much shadowing, mentoring, and training to provide.  Human Resources has no involvement in the day-to-day assignments or interactions between supervisors and other employees and the interns.

18.    I have had some assistants express to me that they rather not host an intern because doing so takes time away from the assistant's own work.

19.    Thus, internship contents vary based on the department and agent that hosts the intern.  Other factors which impact the intern's experience are the time of year of the internship, current projects within each department or handled by a particular agent or assistant, and the personal business style of the intern's supervisor.

20.     An intern's own educational and career goals can also impact the intern's experience.  For example, I have had interns express to me that even though they were assigned to a particular department during their internship, that they wanted the opportunity to complete a project for another department in which they were interested.

21.     There is no uniform policy or consistency among, or even within, departments or agents regarding interns' activities, training, or supervision.  Thus, each intern is provided with a unique experience that is educational and that benefits the interns.

22.     In addition, each supervisor's individual managerial style, mentoring skills and initiatives, personality, and rapport with particular interns leads to, among other things, variable types and frequencies of various opportunities and one-on-one teaching meetings for different interns.

23.     Interns can also affect their own internship experiences, benefits, and training by, among other things, taking advantage of the training opportunities that are offered, expressing interest in particular areas, asking questions, and demonstrating a level of commitment (e.g., arriving when scheduled).  Each internship is also affected by an intern's background and academic focus.  Thus, each individual internship experience – including the training, supervision, and benefits – is unique.

24.     It is my understanding that in connection with this lawsuit, Plaintiffs Kimberly Behzadi and Jason Rindenau filed a motion seeking to represent, and bring claims for unpaid wages on behalf of, a nationwide class of every former intern at ICM between August 26, 2011 and the present.  It is also my understanding that the Plaintiffs seek to represent every intern during this time period, regardless of, among other things, the office, department, or agent that hosted the intern, the individual qualities and commitment of the intern's supervisor/mentor, the

quality of the instruction and training offered during the internship, the nature of the internship experience, the time period during which the internship was hosted and the location of the internship.

25.     Based on my involvement with internships at ICM, the internships were intended to be educational and to provide training and experiences that would benefit the interns, such as by providing real-world work experience and "behind-the-scenes" access to the talent and literary industries in areas that interested the interns and by enhancing the learning the interns gained from their academic work.

26.     I do _not_ believe that it is possible to draw any conclusions about internships in general, or to evaluate the quality of, any particular internship based on the experiences of any other intern(s).  This is because each intern's experience was unique and differed depending on, among other things: his or her own interests and motivation; his or her individual supervisors/mentors; the specific department and agent to which he or she was assigned; whether it was a summer, spring, or fall internship and the year in which he or she interned; and the office location of the internship.


I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: September 15, 2014
          New York, New York

_Jamie Herskowitz_
JAMIE HERSKOWITZ