**OUTTEN & GOLDEN LLP**
Rachel Bien
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY BEHZADI and JASON RINDENAU, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>INTERNATIONAL CREATIVE MANAGEMENT PARTNERS, LLC,<br><br>        Defendant. | **No. 14-cv-4382 (LGS)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND......................................................................... 2

I.  CLAIMS ................................................................................................................................ 2

II.  SETTLEMENT NEGOTIATIONS ..................................................................................... 2

III.  SUMMARY OF THE SETTLEMENT TERMS ................................................................. 3

    A.  The Settlement Fund ................................................................................................ 3

    B.  Class Members........................................................................................................ 3

    C.  Releases................................................................................................................... 3

    D.  Allocation Formula ................................................................................................. 4

    E.  Attorneys' Fees and Costs ...................................................................................... 5

    F.  Settlement Claims Administrator............................................................................ 5

    G.  Notice and Participation of the Class...................................................................... 6

ARGUMENT.............................................................................................................................. 7

I.  The Settlement Classes Meet the Legal Standard for Class Certification ......................... 7

    A.  Numerosity............................................................................................................... 8

    B.  Commonality............................................................................................................ 8

    C.  Typicality ................................................................................................................. 9

    D.  Adequacy of the Plaintiffs and Their Counsel........................................................ 9

    E.  Certification Is Proper Under Rule 23(b)(3).......................................................... 10

        1.  Common Questions Predominate ................................................................ 11

        2.  A Class Action Is a Superior Mechanism................................................... 11

II.  The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved. 12

A.      The Proposed Settlement Is Procedurally Fair.............................................. 13

B.      The Proposed Settlement Is Substantively Fair .................................................... 14

    1.      Litigation Through Trial Would be Complex, Costly, and Long
(*Grinnell* Factor 1) .................................................................................... 14

    2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 15

    3.      Discovery Has Advanced Far Enough to Allow the Parties
to Resolve the Case Responsibly (*Grinnell* Factor 3).............................. 17

    4.      Plaintiffs Would Face Risk If the Case Proceeded
(*Grinnell* Factors 4 and 5)........................................................................ 18

    5.      Maintaining the Class Through Trial Would Not Be Simple
(*Grinnell* Factor 6) .................................................................................... 18

    6.      Defendant's Ability to Withstand a Greater Judgment Is Not
Determinative (*Grinnell* Factor 7). ............................................................ 19

    7.      The Settlement Fund Is Substantial, Even in Light of the Best
Possible Recovery and the Attendant Risks of
Litigation  (*Grinnell* Factors 8 and 9)....................................................... 19

III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law ........................... 20

CONCLUSION.................................................................................................................. 21

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................10, 12

*Ansoumana v. Gristede's Oper. Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) .............................................................................20

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)...........................................................14, 17, 19

*Ballinger v. Advance Mag. Pubs., Inc.*,
    No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014)................................. *passim*

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).......................................................................8

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................12, 13

*Davenport v. Elite Model Mgmt. Corp.*,
    No. 13 Civ. 1061, ECF No. 51 (S.D.N.Y. May 12, 2014)............................... *passim*

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).....................................................................7

*Dziennik v. Sealift, Inc.*,
    No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)............................10

*Eliastam v. NBCUniversal Media, LLC*,
    No. 13 Civ. 4634, ECF No. 83 (S.D.N.Y. May 23, 2015)........................8, 16, 17, 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ.
    00304, 06 Civ. 00347, 06 Civ. 01684, 2007 WL 2230177
    (S.D.N.Y. July 27, 2007) .......................................................................13

*Flynn v. New York Dolls Gentlemen's Club*,
    No. 13 Civ. 6530, ECF Nos. 67 & 80 (S.D.N.Y.) .................................................16

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................... *passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)...............................................................................................8

*Glatt v. Fox Searchlight Pictures, Inc.*,
    293 F.R.D. 516 (S.D.N.Y. 2013) ...................................................10, 15, 18, 19

*Glatt v. Fox Searchlight Pictures, Inc.*,
    No. 13-4478 ........................................................................................................15

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..................................................................................13

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)................................................................................12

*Hernandez v. Immortal Rise, Inc.*,
    No. 11 Civ. 4360, 2015 WL 1579373 (E.D.N.Y. Mar. 27, 2015) .........................16

*Hoffmann-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989)............................................................................................20

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)..................................................................................11

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969)......................................................................18

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
    109 F.R.D. 391 (S.D.N.Y. 1986) ..........................................................................8

*Lizondro-Garcia v. Kefi LLC*,
    300 F.R.D. 169 (S.D.N.Y.) ....................................................................10, 11, 21

*Lizondro-Garcia v. Kefi LLC*,
    No. 12 Civ. 1906, 2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014) .....................13, 21

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ..........................................................................21

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................15

*Marisol A. v. Giuliani*,
    126 F.3d 373 (2d Cir. 1997)..................................................................................9

*McBean v. City of New York,*
   228 F.R.D. 487 (S.D.N.Y. 2005) ...................................................................11

*McKenna v. Champion Int'l. Corp.,*
   747 F.2d 1211 (8th Cir. 1984) ....................................................................20

*Morris v. Affinity Health Plan, Inc.,*
   859 F. Supp. 2d 611 (S.D.N.Y. 2012).........................................................17

*In re PaineWebber Ltd. P'ships Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................18

*In re Penthouse Executive Club Compensation Litig.,*
   No. 10 Civ. 1145, ECF Nos. 142 and 159 (S.D.N.Y.)................................16

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993)..........................................................................9

*Slomovics v. All for a Dollar, Inc.,*
   906 F. Supp. 146 (E.D.N.Y. 1995) .............................................................15

*Spann v. AOL Time Warner, Inc.,*
   No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)................13

*Toure v. Amerigroup Corp.,*
   No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ...............14

*Toure v. Cent. Parking Sys. of N.Y.,*
   No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ............10

*Velez v. Majik Cleaning Serv., Inc.,*
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..............18

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2d Cir. 2001)...................................................................11, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005)......................................................................12, 13

*Wang v. Hearst Corp.,*
   293 F.R.D. 489 (S.D.N.Y. 2013) .......................................................15, 18, 19

*Wang v. Hearst Corp.,*
   No. 13-4480 ..................................................................................................15

*In re Warfarin Sodium Antitrust Litig.,*
   391 F.3d 516 (3d Cir. 2004)........................................................................17

vi

*Wright v. Stern,*
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)......................................................................17

*Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.,*
    758 F.2d 86 (3d Cir. 1985)......................................................................16

**STATUTES**

Fed. R. Civ. P. 23 ..................................................................................... *passim*

**INTRODUCTION**

Plaintiffs Kimberly Behzadi and Jason Rindenau (together, "Plaintiffs") submit this Memorandum of Law in Support of Their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval"). The parties' $725,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiffs seek an order: (1) finally certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Stipulation;[1] and (3) approving the settlement of the Fair Labor Standards Act ("FLSA") claims.

On March 26, 2015, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing. ECF No. 65. Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. Ex. B (Decl. of Josh Lunde ("Lunde Decl.")), Ex. A (Class Notice).

No Class Member has objected to the settlement, only 24 Class Members have excluded themselves, and 149 Class Members have submitted claim forms. Ex. B (Lunde Decl.) ¶¶ 13-17. For the reasons stated below, Plaintiffs respectfully request the Court grant final approval. ICM does not oppose this motion.

---

[1] The Settlement Stipulation is attached as Exhibit A to the Declaration of Rachel Bien in Support of Plaintiffs' Motion for Final Approval ("Bien Decl."). Unless otherwise indicated, all exhibits are attached to the Bien Decl. and all capitalized terms have the same meaning as set forth in the Settlement Stipulation.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    CLAIMS**

On June 17, 2014, Plaintiff Kimberly Behzadi ("Behzadi") filed a class and collective action complaint alleging that International Creative Management Partners, LLC ("ICM" or "Defendant") failed to pay minimum wages to her and other interns for the work that they performed during their internships in violation the FLSA and the New York Labor Law ("NYLL").  ECF No. 1.  On August 15, 2014, Behzadi amended her complaint, adding Jason Rindenau ("Rindenau") as a named Plaintiff and claims under the California Labor Code and Unfair Competition Law.  ECF No. 23.

On June 13, 2014, ICM filed a Statement of Claim with JAMS against Behzadi seeking "a declaratory judgment that Behzadi is not owed any wages from ICM for her academic internship under either the FLSA or the NYLL."  *See* Def.'s Mot. Dismiss, ECF No. 15 at 4. Plaintiffs moved to dismiss the arbitration.  Bien Decl. ¶ 13.  The arbitrator agreed to stay the arbitration during the parties' negotiations.  *Id*.  If the Court grants final approval of the settlement, ICM will dismiss the arbitration with prejudice.  *Id*.

On July 29, 2014, ICM moved the Court to compel Behzadi to arbitrate her claims.  ECF No. 15.  On August 26, 2014, Behzadi opposed ICM's motion to compel and filed a motion for conditional certification and court-authorized notice pursuant to 29 U.S.C. § 216(b).  ECF No. 24.  On September 5, 2014, ICM filed a motion to dismiss Plaintiffs' First Amended Complaint, ECF No. 31, which Plaintiffs opposed.  ECF No. 43.  On February 3, 2015, the Court denied the motions as moot pending Plaintiffs' Motion for Preliminary Approval.  ECF Nos. 57 & 58.

**II.    SETTLEMENT NEGOTIATIONS**

On December 15, 2014, the parties participated in an all-day mediation session with Dina Jansenson of JAMS, a mediator.  Bien Decl. ¶ 18.  At the mediation, the parties reached an

2

agreement on the material terms of a settlement. *Id.* ¶ 21. Over the next few weeks, the parties negotiated a detailed settlement agreement. *Id.* ¶ 22.

## III.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund

Defendant agreed to fund a Maximum Settlement Amount of $725,000 to cover payments to Participating Class Members, Court-approved attorneys' fees, costs, expenses, and service payments, and the claims administrator's fees. Ex. A (Settlement Stipulation) §§ 2, 7-10.

### B.    Class Members

The Settlement Stipulation covers three partially overlapping groups of Class Members. The FLSA Settlement Collective includes all individuals who had Internships at ICM between June 17, 2011 and December 31, 2013. Ex. A (Settlement Stipulation) § 5. The New York Rule 23 Settlement Class includes all individuals who had Internships at ICM in New York State between June 17, 2008 and December 31, 2013. *Id.* ICM provided a list of 196 individuals who had one or more Internships at ICM in New York during this period. Bien Decl. ¶ 28. The California Rule 23 Settlement Class includes all individuals who had Internships at ICM in California between August 15, 2010 and December 31, 2013. Ex. A (Settlement Stipulation) § 5. ICM provided a list of 308 individuals who had one or more Internships at ICM in California during this period. Bien Decl. ¶ 29.

### C.    Releases

FLSA Settlement Collective Members who filed claim forms will release all FLSA claims against ICM arising from the same facts and circumstances set forth in the complaint. Ex. A (Settlement Stipulation) § 15(a). New York Rule 23 Settlement Class Members who did not opt out will release all wage and hour claims relating to their internship during the Applicable Class Period under New York State law. *Id.* California Rule 23 Settlement Class Members who

did not opt out will release all wage and hour claims relating to their internship during the

Applicable Class Period under California state law. *Id.*

### D.    Allocation Formula

Participating Class Members will be paid pursuant to an allocation formula based on the

number of hours each spent interning and whether they interned in New York, California, or

another state.   Ex. A (Settlement Stipulation) § 1(t).  The Internship Hours were compiled from

ICM's records. *Id.* §§ 1(t), 6.  Class Members will be assigned one point for each Internship

Hour. *Id.* § 6.  Class Members were advised of the allocation formula and their potential awards

in the Notice. *See* Ex. B (Lunde Decl.), Ex. A (Class Notice) ¶ 4.

Two-thirds of the Net Settlement Amount will be allocated to the California Rule 23

Settlement Class ("CA Net Settlement Amount") and one-third of the Net Settlement Amount

will be allocated to the New York Rule 23 Settlement Class ("NY Net Settlement Amount").

The allocation reflects the greater number of California Rule 23 Class Members and the value of

additional monetary remedies available under California law, including claims for unlawful

deductions, mandatory minimum payments of 30 days of wages based on the failure to pay all

wages due, statutory amounts for record-keeping violations, unfair business practices claims, and

violations of the California Private Attorneys General Act ("PAGA"). *See* ECF No. 23 at 21-28.

The parties have agreed to settle the PAGA claim for $8,700.  Seventy-five percent of this

amount, or $6,525, will be paid to the California Labor and Workforce Development Agency.

This amount will be deducted from the Maximum Settlement Amount.  Bien Decl. ¶ 39

The Claims Administrator will calculate each California Rule 23 Class Member's

proportionate share by adding all the points for the California Rule 23 Settlement Class to obtain

the "Total CA Denominator." Ex. A (Settlement Stipulation) § 6(b).  It will then divide the

number of points for each Participating California Rule 23 Class Member by the Total CA Denominator to obtain each California Rule 23 Class Member's "Portion of the CA Net Settlement Amount." *Id*. Finally, the Claims Administrator will multiply each CA Rule 23 Class Member's Portion of the CA Net Settlement Amount by the CA Net Settlement Amount to determine each California Rule 23 Settlement Class Member's "Settlement Award." *Id*.

The Claims Administrator will calculate each New York Rule 23 Class Member's proportionate share by adding all the points for the New York Rule 23 Settlement Class to obtain the "Total NY Denominator." Ex. A (Settlement Stipulation) § 6(c). It will then divide the number of points for each Participating NY Rule 23 Class Member by the Total NY Denominator to obtain each New York Rule 23 Class Member's "Portion of the NY Net Settlement Amount." *Id*. Finally, the Claims Administrator will multiply each New York Rule 23 Settlement Class Member's Portion of the NY Net Settlement Amount by the NY Net Settlement Amount to determine each New York Rule 23 Settlement Class Member's "Settlement Award." *Id*.

### E.      Attorneys' Fees and Costs

Class Counsel has filed a Motion for Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of Service Payments for Behzadi and Rindenau simultaneously with this Motion.

### F.      Settlement Claims Administrator

The parties retained Rust Consulting, Inc., a third-party claims administrator, to administer the settlement. Ex. B (Lunde Decl.) ¶ 3. Rust Consulting is headquartered in Minneapolis, Minnesota. *Id.* It has administered over 1,700 labor and employment settlements.

*Id.* It also has a labor and employment team that is dedicated to settlement administration of cases involving wage-and-hour, discrimination, and ERISA claims. *Id.*

Rust Consulting's fees will be paid from the Fund. Ex. A (Settlement Stipulation) § 7. Class Counsel does not have a personal relationship with Rust Consulting and did not receive any gratuities in exchange for contracting with them. Ex. B (Lunde Decl.) ¶ 4. Class Counsel requested bids from five claims administrators. Bien Decl. ¶ 49. Rust Consulting provided the lowest total cost bid. *Id.* ¶ 50. Rust Consulting has capped its fees at $17,000. Ex. B (Lunde Decl.) ¶ 21.

### G.       Notice and Participation of the Class

On April 23, 2015, Rust Consulting mailed and emailed Notices to 499 Class Members, whose names, addresses, and email addresses were provided by ICM. Ex. B (Lunde Decl.) ¶ ¶ 13. After the Notices were mailed, Rust Consulting received 119 Notices returned as undeliverable by the Post Office without updated addresses. *Id.* ¶ 16. Rust Consulting performed 117 address traces for these undeliverable Notices, and re-mailed 66 of them to Class Members for whom new addresses were located. *Id.* ¶ 16. Class Counsel also called each Class Member for whom they were able to locate a telephone number to attempt to locate an updated address. Bien Decl. ¶ 51. There were a total of 53 Class Members for whom Notices were ultimately undeliverable. Ex. B (Lunde Decl.) ¶ 16.

On June 5, 2015, Rust Consulting sent out a reminder postcard to Class Members who had not yet filed a Claim Form. Ex. B (Lunde Decl.) ¶ 19. The reminder postcard was approved by Class Counsel and Defendant's counsel and was intended to remind Class Members of their June 20, 2015 deadline to submit a claim form, opt-out, or object, as stated in the Notice. Ex. B (Lunde Decl.) ¶ 19, Ex. D (Reminder Postcard).

One hundred forty-nine Class Members returned a claim form to participate in the settlement, which is 30 percent of the Class.  Ex. B (Lunde Decl.) ¶ 17.  The Notice advised Class Members, among other things, that they could object to or exclude themselves from the settlement.  *Id.*, Ex. A (Notice) ¶ 9.  No Class Member objected to the Settlement.  Ex. B (Lunde Decl.) ¶ 20.  Twenty-four Class Members excluded themselves from the settlement.  *Id.* ¶ 18.

After Rust Consulting issued the Notice, Class Counsel spoke with more than 188 Class Members with questions about the settlement, most of whom reacted positively to the settlement.  Bien Decl. ¶ 52.

**ARGUMENT**

**I.      The Settlement Classes Meet the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  On March 26, 2015, the Court preliminarily certified the settlement class.  ECF No. 65.  Plaintiffs respectfully request that the Court grant final certification because the settlement classes meet all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").

Under Rule 23, a class action may be maintained if all of the requirements of Rule 23(a) are met, as well as one of the requirements of Rule 23(b).  Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

7

adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.    Numerosity

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted).  Plaintiffs easily satisfy this requirement because there are 308 California Rule 23 Class Members and 196 New York Rule 23 Class Members.  Bien Decl. ¶¶ 28, 29.

### B.    Commonality

The New York Rule 23 Settlement Class and the California Rule 23 Settlement Class also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share "common questions of fact or law."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

Here, the Plaintiffs allege that they and the classes they seek to represent were subject to the same policy of classifying them as non-employees who are not entitled to minimum wage protections.  This common factual and legal question is sufficient to satisfy commonality for settlement purposes.  *See Eliastam v. NBCUniversal Media, LLC*, No. 13 Civ. 4634, ECF No. 83 at 2 (attached to the Bien Decl. as Ex. J) (certifying a settlement class of interns who alleged they were improperly denied the minimum wage); *Davenport v. Elite Model Mgmt. Corp.*, No. 13 Civ. 1061, ECF No. 51 at 6 (attached to the Bien Decl. as Ex. L) (commonality was met where "the central claim [was] that potential Class Members were all misclassified as 'trainees' during

the relevant period," and where they all participated in the same internship program); *Ballinger v. Advance Mag. Pubs., Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *4 (S.D.N.Y. Dec. 29, 2014) (in intern case, commonality satisfied where class members had common duties and alleged they were misclassified as non-employees).

### C.      Typicality

Typicality is also satisfied because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 373, 376 (2d Cir. 1997).  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

In this case, Plaintiffs and the class members all interned for ICM and allege that, based on their status as interns, they suffered the same violation of the law.  This satisfies the typicality requirement.  *See* Ex. L (*Davenport v. Elite Model Mgmt. Corp.*) at 7 (finding typicality met where plaintiffs alleged that they, "like the class they seek to represent, were wrongfully misclassified as 'trainees' and consequently unpaid for their work for the Defendant"); *Ballinger*, 2014 WL 7495092, at *5 (typicality was satisfied where interns do "similar work and were classified . . . under the same corporate policy").

### D.      Adequacy of the Plaintiffs and Their Counsel

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure

9

that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class Members.'" *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)) (internal quotation marks omitted).

Plaintiffs do not have interests that are antagonistic to or at odds with the Class Members' interests. *See Ballinger*, 2014 WL 7495092, at *5; *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 176 (S.D.N.Y.) (plaintiffs were adequate where there was no evidence that their interests were at odds with the class's interests). Outten & Golden LLP is also adequate to serve as class counsel. Courts have noted that the firm "routinely represents plaintiffs in employment litigation in th[e] [SDNY] and has appeared in many major FLSA and Labor Law cases," and have held that, based on this work, there is "no question that it will prosecute the interests of the class vigorously." *See Ballinger*, 2014 WL 7495092, at *7; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516, 538 (S.D.N.Y. 2013) (appointing Outten & Golden LLP as class counsel).

### E.    Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

10

### 1.   Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001), *abrogated on other grounds by In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) (internal quotation marks and citation omitted).   The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiffs' common contention – that they were employees entitled to be paid the minimum wage – predominates over any factual or legal variations among Class Members.  *See* Ex. L (*Davenport v. Elite Model Mgmt. Corp.*) at 8-9 (predominance met where the defendant implemented a single policy classifying its interns as non-employees); *Ballinger*, 2014 WL 7495092, at *6 (same); *Lizondro-Garcia,* 300 F.R.D. at 177 (finding predominance met where "[t]he central issues in this litigation are whether defendants had policies that denied their employees overtime . . . . Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies 'are about the most perfect questions for class treatment'") (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y. 2007)).

### 2.   A Class Action Is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement.  Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of

11

the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[2]

The class action device is superior in this case because it is unlikely that individual Class Members would have brought their claims if not for this case. *See* Fed. R. Civ. P. 23(b)(3). In addition, employing the class device here will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims. *See* Ex. L (*Davenport v. Elite Model Mgmt. Corp.*) at 9; *Ballinger*, 2014 WL 7495092, at *6 (same).

## II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved.

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts evaluate whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other*

---

[2]     Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (citation omitted).

12

*grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at \*6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

### A.    The Proposed Settlement Is Procedurally Fair.

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato*, 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 00304, 06 Civ. 00347, 06 Civ. 01684, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007).

Here, the parties engaged in an exchange of information and conducted their own investigations that allowed them to evaluate the claims, defenses, and damages on a classwide basis.  Bien Decl. ¶ 19.  In addition, the parties engaged in arm's-length negotiations with a mediator, who assisted the parties to understand the strengths and weaknesses of their respective positions. *Id.* ¶ 18.  Based on these circumstances, the parties were equipped to reach a settlement. *See* Ex. L (*Davenport v. Elite Model Mgmt. Corp.*) at 11 (finding settlement was procedurally fair where it "was reached through arm's length negotiations supervised by an experienced mediator, after experienced counsel had evaluated the merits of Plaintiffs' claims, and is untainted by collusion"); *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 WL

4996248, at *3-4 (S.D.N.Y. Oct. 7, 2014) (finding settlement procedurally fair where parties exchanged data relevant to the claims, engaged in arm's-length negotiations, and participated in a settlement conference); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator).

### B.       The Proposed Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448. The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id*. at 463. Eight of the *Grinnell* factors weigh in favor of final approval of the settlement and one is neutral.

### 1.       Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure a recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78. This case is no exception, with 497

14

Class Members and claims under federal and state laws.

Extensive discovery would be required to establish liability and damages and to support Plaintiffs' anticipated class certification motion and ICM's opposition to such motion. Both sides would likely move for summary judgment on the liability questions, which would require further briefing. If the Court determined that fact disputes preclude summary judgment, a fact-intensive trial on both liability and damages would be necessary.

This case is further complicated by the "unsettled status of internship class actions." *See* Ex. L (*Davenport v. Elite Model Mgmt. Corp.*) at 12. Two district courts in this Circuit adopted different tests for determining whether an intern is an employee under the FLSA. *Compare Glatt*, 293 F.R.D. at 531-32, *with Wang v. Hearst Corp.*, 293 F.R.D. 489, 492-94 (S.D.N.Y. 2013). The cases are pending on appeal in the Second Circuit, which has yet to rule. *See Glatt v. Fox Searchlight Pictures*, *Inc.*, No. 13-4478; *Wang v. Hearst Corp.*, No. 13-4480. The settlement, on the other hand, provides significant relief in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of the settlement." *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 150 (E.D.N.Y. 1995) (quoting *Weiss v. Drew Nat'l*, 465 F. Supp. 548, 551 (S.D.N.Y.1979)) (internal quotation marks omitted). Here, there were no objections. Bien Decl. ¶ 20.

As discussed above, 149 Class Members submitted claim forms to obtain a portion of the settlement – representing 30 percent of the Class.  Class Counsel made every effort to reach Class Members to ensure they received the Notice and were aware of the deadline, including by requesting that the claims administrator send a reminder mailing part-way through the notice period and calling Class Members who had not returned their claim forms.  Bien Decl. ¶ 52.

Courts have approved settlements with claims rates that are not much higher or in some cases lower than the claims rate here.  *See*, *e.g.*, *Hernandez v. Immortal Rise, Inc.*, No. 11 Civ. 4360, 2015 WL 1579373, at *6 (E.D.N.Y. Mar. 27, 2015) (approving wage and hour settlement with a 20 percent claim rate); *Flynn v. New York Dolls Gentlemen's Club*, No. 13 Civ. 6530, ECF Nos. 67 at 6 & 80 (attached to the Bien Decl. as Ex. M) (motion for approval of wage and hour settlement with approximately 31.97 percent claim rate and approval order); Ex. J (*Eliastam v. NBCUniversal Media, LLC*) at 7; Ex. K (*Eliastam v. NBCUniversal Media, LLC*) (motion for approval of intern wage and hour settlement with approximately 30 percent claim rate and approval order); Ex. L (*Davenport v. Elite Model Mgmt. Corp.*) at 3-4 (approving intern wage and hour settlement with a 35 percent claim rate); *In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, ECF Nos. 142 at 19 & 159 (attached to the Bien Decl. as Ex. N) (motion for approval of wage and hour settlement with approximately 19 percent claim rate and approval order); *see also Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92 (3d Cir. 1985) (in antitrust class action case, noting that only 12 percent of the class responded to the notice by filing a claim to share in the settlement); 2 McLaughlin on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range.").

16

Out of 497 Class Members, approximately 4.8 percent filed exclusions.  *See* Ex. B (Lunde Decl.) ¶ 18.  This supports final approval.  *See, e.g., Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (where 16 out of 1500 class members excluded themselves and only one objected, the "response demonstrates strong support for the settlement"); Ex. K (*Eliastam v. NBCUniversal Media, LLC*) at 4 (noting that 37 out of 8,960 class members opted out of the settlement); *Wright v. Stern,* 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate").

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require many more hours of discovery for both sides, the parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks and citation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks and citation omitted).

The parties' discovery here meets this standard.  Class Counsel conducted interviews of several former interns, reviewed internship postings, and engaged in an information exchange with Defendants regarding their damages estimates and the evidence supporting liability.  Bien Decl. ¶ 20.  In addition, the parties engaged in arm's-length negotiations facilitated by a mediator.  *Id.* ¶ 18.  Based on these circumstances, the parties were equipped to reach a settlement.  *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in the relatively early

17

stages of discovery" where parties had exchanged information related to the claims and where counsels' negotiations, while "cooperative" had "been in no way collusive").

### 4. Plaintiffs Would Face Risk If the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

Here, there is significant risk because the Second Circuit has not yet determined which legal standard applies to wage claims by unpaid interns. As discussed above, two district courts in this Circuit adopted different tests for determining whether an intern is an employee under the FLSA. *Compare Glatt*, 293 F.R.D. 516 at 531-32, *with Wang*, 293 F.R.D. at 492-94. Two very different outcomes resulted in these cases – in one, the court granted summary judgment and class certification to the plaintiffs; in the other, the court denied the plaintiffs' motion for summary judgment and denied class certification. These differing outcomes demonstrate the uncertainty that the parties face. The proposed settlement alleviates this uncertainty. This factor therefore weighs in favor of final approval.

### 5. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not ruled on Plaintiffs' collective action motion. *See* ECF Nos. 57 & 58 (denying motion as moot). A motion for class certification under Rule 23 would require significant

discovery and intense, exhaustive briefing.  The different outcomes in the *Glatt* and *Wang* cases with respect to class certification demonstrate the risk that the parties face.  *Compare Glatt*, 293 F.R.D. at 534-38, *with Wang*, 293 F.R.D. at 494-98.  Settlement eliminates this risk, expense, and delay.  This factor favors final approval.

### 6.    Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

Although Defendant likely could have withstood a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair."  *In re Austrian*, 80 F. Supp. at 178 n.9; *accord Ballinger*, 2014 WL 7495092, at \*3.  Therefore, this factor is neutral and does not preclude the Court from granting final approval.

### 7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The $725,000 settlement fund is substantial given the value of the claims and the litigation risks.  Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2; *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at \*12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million").

Here, the settlement represents a substantial recovery for the Class in light of the risks. The average Class Member award (net of attorneys' fees and costs, service payments, claims administration fees, and Defendant's share of payroll taxes) is approximately $723.87. Bien Decl. ¶ 75; Ex. B (Lunde Decl.) ¶ 17. Class Member awards range from approximately $58.31 (for a Class Member who interned for just over a week) to $3,628.61. Bien Decl. ¶ 75. This is in line with (or more favorable than) other unpaid intern settlements that courts have approved. *See* Ex. L (*Davenport v. Elite Model Mgmt. Corp.*) at 16 (settlement payments ranged from $700.64 to $1,751.61); Ex. K (*Eliastam v. NBCUniversal Media, LLC*) at 25 (average settlement award was approximately $500).

Based on Class Counsel's estimates, the Net Settlement Amount is approximately 41 percent of the Class's unpaid wages. Bien Decl. ¶ 76. This is a significant recovery. *See* Ex. K (*Eliastam v. NBCUniversal Media, LLC*) at 25 (approving settlement where the *gross* recovery represented approximately 39 percent of unpaid wages). Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

## III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of the FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Oper. Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).

20

"Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." *Lizondro-Garcia*, 2015 WL 4996248, at \*6.  Courts typically regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).

Because the Settlement Stipulation resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved. *See Lizondro-Garcia*, 2014 WL 4996248, at \*6.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) finally certify the settlement class; (2) grant final approval of the class action settlement; and (3) approve the FLSA settlement.

Dated: June 24, 2015
New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Rachel Bien
Rachel Bien
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060

*Attorneys for Plaintiffs*

21