**OUTTEN & GOLDEN LLP**
Rachel Bien
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY BEHZADI and JASON RINDENAU, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>INTERNATIONAL CREATIVE MANAGEMENT PARTNERS, LLC,<br><br>    Defendant. | **No. 14-cv-4382 (LGS)** |

**DECLARATION OF RACHEL BIEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND SERVICE PAYMENTS**

I, Rachel Bien, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a partner at Outten & Golden LLP ("O&G") in New York, New York, class counsel herein, and co-chair of its Class Action Practice Group.  O&G is a 40+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation that involve wage and hour and discrimination claims, as well as contract and severance negotiations.

2.      I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the class.

3.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**My Background and Experience**

4.      I received a Juris Doctor degree *cum laude* from Brooklyn Law School in 2005. I joined O&G in October 2006 after serving as a Law Clerk to the Honorable Thomas G. Nelson on the Ninth Circuit Court of Appeals.  Since joining O&G, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5.      I am a member of the American Bar Association's Labor and Employment Law Section and the Equal Employment Opportunity Committee.  I am also a member of the National Employment Lawyers Association ("NELA") and NELA's New York Chapter.  I speak frequently on employment law issues, including wage and hour topics.

6.      I am or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Glatt v. Fox Searchlight Pictures, Inc.*, in which the district court granted summary judgment in favor of the plaintiffs and certified a class and collective of unpaid interns, 293 F.R.D. 516 (S.D.N.Y. June 11, 2013), *mot. to certify appeal granted by* 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013).  Others certified for settlement purposes include *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *3-7 (S.D.N.Y. Dec. 29, 2013) (certifying class of unpaid interns and approving settlement); *Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *1-2 (S.D.N.Y. May 9, 2012) (certifying class of restaurant workers and approving settlement of wage and hour class action brought under New York and federal law); *Campos v. Goode*, No. 10 Civ. 0224, 2011 WL 9530385, at *2-3 (S.D.N.Y. Mar. 4, 2011) (same); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) (same); and *McMahon v. Olivier*

*Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) (same).

7.      Sally Abrahamson is an associate at O&G.  She received a J.D. *cum laude* from the American University, Washington College of Law in 2009.  Prior to joining O&G in 2012, Abrahamson litigated wage and hour cases at the D.C. Employment Justice Center from July 2011 to September 2012.  She previously served as a judicial clerk for two years in the United States District Court for the Western District of Texas.

8.      Abrahamson is one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the class.

9.      Courts have repeatedly found O&G to be adequate class counsel in wage and hour class actions.  *See, e.g.*, *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *3 (S.D.N.Y. Jan. 29, 2014) (O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law") (internal quotation marks and citation omitted); *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel and noting that O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law").

**Litigation & Settlement History**

10.      On June 17, 2014, Plaintiff Kimberly Behzadi ("Behzadi") filed a class and collective action complaint alleging that International Creative Management Partners, LLC ("ICM" or "Defendant") failed to pay minimum wages to her and other interns for the work that they performed during their internships in violation the FLSA and the New York Labor Law ("NYLL").  ECF No. 1.

11.     On August 15, 2014, Behzadi amended her complaint, adding Jason Rindenau ("Rindenau") as a named Plaintiff and claims under the California Labor Code and Unfair Competition Law.  ECF No. 23.

12.     On June 13, 2014, ICM filed a Statement of Claim with JAMS against Behzadi seeking "a declaratory judgment that Behzadi is not owed any wages from ICM for her academic internship under either the FLSA or the NYLL."  *See* ECF No. 15 at 4.

13.     Behzadi sought to dismiss or stay the arbitration.  Ultimately, the arbitration was stayed pending the parties' negotiations.  The arbitration will be dismissed upon the Court's final approval of the settlement of this lawsuit.

14.     On July 29, 2014, ICM moved the Court to compel Behzadi to arbitrate her claims.  ECF No. 15.

15.     On August 26, 2014, Behzadi opposed ICM's motion to compel and filed a motion for conditional certification and court-authorized notice pursuant to 29 U.S.C. § 216(b). ECF No. 24.

16.     On September 5, 2014, ICM filed a motion to dismiss Plaintiffs' First Amended Complaint, ECF No. 31, which Plaintiffs opposed.  ECF No. 43.

17.     On February 3, 2015, the Court denied the motions as moot pending Plaintiffs' Motion for Preliminary Approval.  ECF Nos. 57 & 58.

18.     On December 15, 2014, the parties participated in an all-day mediation session with Dina Jansenson of JAMS, a mediator, who assisted the parties to understand the strengths and weaknesses of their respective positions.

19.     Prior to mediation, the parties engaged in an exchange of information and conducted their own investigations that allowed them to evaluate the claims, defenses, and

damages on a classwide basis.

20.     Class Counsel conducted interviews of several former interns and reviewed internship postings, intern offer letters, and other policy documents.

21.     At the mediation, the parties reached an agreement on the material terms of a settlement.

22.     Over the next few weeks, the parties negotiated a detailed settlement agreement.

**Preliminary Approval**

23.     On March 26, 2015, the Court granted preliminary approval of the settlement, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing.  ECF No. 65.

**Settlement Terms and Allocation Formula**

24.     Attached as **Exhibit A** is a copy of the Settlement Stipulation.

25.     Defendant agreed to fund a Maximum Settlement Amount of $725,000 to cover payments to Participating Class Members, Court-approved attorneys' fees, costs, expenses, and service payments, and the claims administrator's fees.  Ex. A (Settlement Stipulation) §§ 2, 7-10.

26.     The Settlement Stipulation covers three partially overlapping groups of Class Members.

27.     The FLSA Settlement Collective includes all individuals who had Internships at ICM between June 17, 2011 and December 31, 2013.  *Id*. § 5.

28.     The New York Rule 23 Settlement Class includes all individuals who had Internships at ICM in New York State between June 17, 2008 and December 31, 2013.  *Id*.  ICM provided a list of 196 individuals who had one or more Internships at ICM in New York during

this period.

29.     The California Rule 23 Settlement Class includes all individuals who had Internships at ICM in California between August 15, 2010 and December 31, 2013.  *Id*. § 5. ICM provided a list of 308 individuals who had one or more Internships at ICM in California during this period.

30.     FLSA Settlement Collective Members who file claim forms will release all FLSA claims against ICM arising from the same facts and circumstances set forth in the complaint.  *Id*. § 15(a).

31.     New York Rule 23 Settlement Class Members who did not opt out will release all wage and hour claims relating to their internship during the Applicable Class Period under New York State law.  *Id*.

32.     California Rule 23 Settlement Class Members who did not opt out will release all wage and hour claims relating to their internship during the Applicable Class Period under California state law.  *Id*.

33.     Participating Class Members will be paid pursuant to an allocation formula based on the number of hours each spent interning and whether they interned in New York, California, or another state.  *Id*. § 1(t).

34.     Internship Hours were compiled from ICM's records.  *Id*. §§ 1(t), 6.

35.     Class Members will be assigned one point for each Internship Hour.  *Id*. § 6.

36.     Class Members were advised of the allocation formula and their potential awards in the Notice.

37.     Two-thirds of the Net Settlement Amount will be allocated to the California Rule 23 Settlement Class ("CA Net Settlement Amount") and one-third of the Net Settlement Amount

6

will be allocated to the New York Rule 23 Settlement Class ("NY Net Settlement Amount").

38.    The allocation reflects the greater number of California Rule 23 Class Members and the value of additional monetary remedies available under California law, including claims for unlawful deductions, mandatory minimum payments of 30 days of wages based on the failure to pay all wages due, statutory amounts for record-keeping violations, unfair business practices claims, and violations of the California Private Attorneys General Act ("PAGA").  *See* ECF No. 23 at 21-28.

39.    The parties have agreed to settle the PAGA claim for $8,700.  Seventy-five percent of this amount, or $6,525, will be paid to the California Labor and Workforce Development Agency.  This amount will be deducted from the Maximum Settlement Amount.

40.    The Claims Administrator will calculate each California Rule 23 Class Member's proportionate share by adding all the points for the California Rule 23 Settlement Class to obtain the "Total CA Denominator."  Ex. A (Settlement Stipulation) § 6(b).

41.    It will then divide the number of points for each Participating California Rule 23 Class Member by the Total CA Denominator to obtain each California Rule 23 Class Member's "Portion of the CA Net Settlement Amount."  *Id*.

42.    Finally, the Claims Administrator will multiply each CA Rule 23 Class Member's Portion of the CA Net Settlement Amount by the CA Net Settlement Amount to determine each California Rule 23 Settlement Class Member's "Settlement Award."  *Id*.

43.    The Claims Administrator will calculate each New York Rule 23 Class Member's proportionate share by adding all the points for the New York Rule 23 Settlement Class to obtain the "Total NY Denominator."  *Id*.  § 6(c).

44.     It will then divide the number of points for each Participating NY Rule 23 Class Member by the Total NY Denominator to obtain each New York Rule 23 Class Member's "Portion of the NY Net Settlement Amount." *Id*.

45.     Finally, the Claims Administrator will multiply each New York Rule 23 Settlement Class Member's Portion of the NY Net Settlement Amount by the NY Net Settlement Amount to determine each New York Rule 23 Settlement Class Member's "Settlement Award." *Id*.

**Claims Administration**

46.     The parties retained Rust Consulting, Inc. ("Rust"), a third-party claims administrator, to administer the settlement.

47.     Rust's fees will be paid from the Fund.  Ex. A (Settlement Stipulation) § 7.

48.     Attached as **Exhibit B** is the Declaration of Josh Lunde, dated June 23, 2015, and supporting exhibits ("Lunde Decl."). Mr. Lunde supervised the administration of the settlement notices in this case.

49.     Class Counsel requested bids from five claims administrators.

50.     Rust provided the lowest total cost bid.

51.     Class Counsel called each Class Member for whom Rust was unable to locate an updated address and whose telephone number Class Counsel was able to locate to attempt to find an updated address.

52.     After Rust issued the Notice, Class Counsel spoke with more than 188 Class Members and answered questions about the settlement.  Class Counsel made every effort to reach Class Members to ensure they received the Notice and were aware of the deadline, including by requesting that the claims administrator send a reminder mailing part-way through

the notice period and calling Class Members who had not returned their claim forms.  Most Class Members reacted positively to the settlement.

**Attorney Time Spent on the Negotiations and Litigation**

53.    Class Counsel has spent approximately 706.7 attorney, paralegal, and support staff hours prosecuting and negotiating the settlement of this case.  Although O&G is relatively large for a plaintiffs' side employment law firm, O&G primarily used only two attorneys to litigate this case – a partner and an associate – and made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.  Attached as **Exhibit C** is a summary of the time spent by each attorney, paralegal, and support staff member as of June 19, 2015.

54.    The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

55.    Attached as **Exhibit D** are O&G's contemporaneous time records.

56.    Multiplying the hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of $276,105.50.

57.    Class Counsel's request for one-third of the Maximum Settlement Amount, or $241,666, is less than their lodestar.

58.    As of June 22, 2015, O&G has incurred approximately $9,919.93 in out-of-pocket costs and expenses prosecuting this litigation.  These expenses include court fees, postage, travel expenses, printing, electronic research, a portion of the mediator's fees, and messenger fees.  A summary of O&G's itemized costs is attached as **Exhibit E**.

59.    Class Counsel's expenses were incidental and necessary to the representation of

the Class.

60.    Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.

61.    Although Class Counsel attempted to resolve the case before filing a lawsuit, Defendant filed an individual arbitration against Plaintiff Behzadi, which precluded any classwide settlement discussions.

62.    As a result, Class Counsel was forced to litigate both in this Court and in arbitration, although they ultimately succeeded in having the arbitration temporarily stayed.

63.    The parties engaged in significant motion practice before entering into settlement talks, including briefing a motion for conditional certification, a motion to compel arbitration, and a motion to dismiss the amended complaint.

64.    In advance of mediation, Defendant produced information about the putative class, including their internship dates, their hours, and the locations where they interned.

65.    Class Counsel analyzed the information and interviewed several former ICM interns to verify the data and to evaluate the claims and defenses.

66.    Class Counsel created a detailed damages analysis.

67.    Both before the notice issued and throughout the notice process, Class Counsel communicated regularly with Rust to oversee the administration process and responded to numerous inquiries from Class Members.

68.    The requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.

69.    In Class Counsel's experience, overseeing the final steps of the settlement process requires an ongoing commitment.

70.    Class Counsel takes on challenging cases like this one because we believe that they help push the law in a direction favorable to employees.

71.    We do so despite the very real risk that the case could result in an expensive loss.

72.    Our experiences litigating the *Glatt* and *Hearst* cases demonstrate the degree of uncertainty involved in resolving the liability and certification issues that this case also presents.

73.    Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.   Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Class counsel stood to gain nothing in the event the case was unsuccessful.

74.    In our experience, New York City law firms that represent plaintiffs in employment matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis.  In Plaintiffs' retainer agreements with class counsel, Plaintiffs agreed that class counsel could apply to the Court for one-third of a class-wide recovery and that they would pay class counsel one-third of any individual recovery.

75.    The average net settlement payment is approximately $723.87, and payments range from $58.31 to $3,628.61.

11

76.     Class Counsel estimates that the recovery represents approximately 41 percent of the class's unpaid wages, net of attorneys' fees, expenses, administration fees, and service payments

**Plaintiffs' Efforts**

77.     Plaintiffs made important contributions to the prosecution and fair resolution of this action on behalf of Class Members.

78.     They assisted Class Counsel's investigation and settlement of the claims by providing detailed factual information and documents regarding their duties and hours worked, and the duties and hours of other Class Members.

79.     Plaintiffs also provided relevant documents in their possession; reviewed and commented on declarations used to support the 216(b) motion and oppositions to Defendants' motions to compel arbitration and to dismiss the amended complaint; helped to prepare for the mediation; and made themselves available to speak to Class Counsel to assist their factual investigation.

80.     In addition, Behzadi travelled to New York City from Buffalo to attend the mediation, at which she and Rindenau, who was available by phone, helped to respond to Defendant's factual contentions and provided feedback on the settlement terms.

81.     Both Plaintiffs provided helpful factual information in response to ICM's arguments during the mediation and helped to educate the mediator about the facts.

82.     Plaintiffs also reviewed the settlement terms and provided feedback.

83.     Although Plaintiffs no longer worked at ICM, they nevertheless faced the risk that their current or future employers might retaliate against them for their involvement in this lawsuit.

84.     This is particularly true in cases like this one that receive media attention that can be easily located on Google.

85.     Plaintiffs' names were mentioned in press accounts of the case.

86.     Attached as **Exhibit F** is an article by Dominic Patten, entitled *ICM Partners Trying to Head Off Interns' Class Action Lawsuit*, DEADLINE, Aug. 29, 2014.

87.     Attached as **Exhibit G** is an article by Eriq Gardner, entitled *Former ICM Interns Seek Class Action Certification*, THE HOLLYWOOD REPORTER, Aug. 27, 2014.

88.     Attached as **Exhibit H** is an article by Nona Willis Aronowitz, entitled *'No one should work for free': Is this the end of the unpaid internship?*, NBC News, Sept. 2, 2013.

89.     Attached as **Exhibit I** is an article by Steven Greenhouse, entitled *The Unpaid Intern, Legal or Not*, N.Y. TIMES, April 2, 2010.

**Additional Exhibits**

90.     Attached as **Exhibit J** is a copy of *Eliastam v. NBCUniversal Media, LLC*, No. 13 Civ. 4634, ECF No. 83.

91.     Attached as **Exhibit K** is a copy of *Eliastam v. NBCUniversal Media, LLC*, No. 13 Civ. 4634, ECF No. 73.

92.     Attached as **Exhibit L** is a copy of *Davenport v. Elite Model Mgmt. Corp.*, No. 13 Civ. 1061, ECF No. 51.

93.     Attached as **Exhibit M** is a copy of *Flynn v. New York Dolls Gentlemen's Club*, No. 13 Civ. 6530, ECF Nos. 67 & 80.

94.     Attached as **Exhibit N** is a copy of *In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, ECF Nos. 142 & 159.

95.     Attached as **Exhibit O** is a copy of Hr'g Tr. 16, Dec. 19, 2014, *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326.

96.     Attached hereto as **Exhibit P** is a true and correct copy of a January 8, 2015 order in *Munir v. Sunny's Limousine Serv., Inc.*, No. 13 Civ. 1581 (S.D.N.Y.)

97.     Attached hereto as **Exhibit Q** is a true and correct copy of a September 12, 2014 order in *Santos v. Goode*, No. 13 Civ. 3085 (S.D.N.Y.)

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 24th day of June, 2015
New York, New York.

/s/ Rachel Bien
Rachel Bien

**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
Tel: (212) 245-1000

14